FILED
COURT OF APPEALS
DIVISION II

2014 JAN 14  AM 9: 25

STATE OF WASHINGTON

BY_____
            DEPUTY

# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| STATE OF WASHINGTON, | No. 42257-3-II |
| Respondent/Cross Appellant, | |
| v. | |
| DARCUS D. ALLEN, | PUBLISHED OPINION |
| Appellant/Cross Respondent. | |

PENOYAR, J. — A jury convicted Darcus Allen of first degree premeditated murder for his role in the murders of four police officers. He appeals, arguing that (1) insufficient evidence supports his convictions, (2) the prosecutor committed misconduct by misstating the level of knowledge required for accomplice liability, (3) evidence from the warrantless entry into his motel room should have been suppressed, (4) the trial court erred by not including rendering criminal assistance as a lesser included offense, (5) his sentence enhancement for crimes against uniformed officers does not apply to accomplices, and (6) the trial spectators' t-shirts violated his fair trial right. He also includes a statement of additional grounds (SAG), arguing insufficient evidence and an invalid sentence enhancement. The State cross appeals, contending that the trial court erred by dismissing Allen's second degree murder counts for insufficient evidence.

There is sufficient evidence that Allen knew his actions were furthering the crime and, although the prosecutor misstated the mental state required for accomplice liability, this did not prejudice the trial's outcome. Additionally, (1) exigent circumstances justified the warrantless entry into Allen's motel room, (2) rendering criminal assistance is not a lesser included offense of first degree murder as an accomplice, (3) the sentence enhancement applied to Allen as an accomplice because it was based on the victims' statuses and not his actions, (4) the t-shirts did

not violate his fair trial right because they did not convey a message of innocence or guilt, and (5) the issues in his SAG are meritless. We do not reach the State's cross appeal because remand is not necessary. We affirm.

## FACTS

This case arises from Maurice Clemmons's shooting of four Lakewood police officers on November 29, 2009. At about 8 A.M., Clemmons walked into a coffee shop with two guns, a 9 mm Glock and a .38 caliber semiautomatic Smith and Wesson. He shot and killed four officers and then fled the scene, wounded, in a white truck. Allen was the driver of the truck.

In the week before the shooting, Clemmons indicated that he was planning to harm police officers. Allen twice heard Clemmons threaten to harm police if they came looking for him. Both times, he displayed a gun. Allen also knew that Clemmons had cut off his ankle monitor.[1]

On the day of the shooting, Clemmons called Allen at 7:30 A.M. and asked Allen to wash his truck; Allen agreed. Allen admitted that he and Clemmons drove past the coffee shop, a known gathering place for police, at least once on the way to the car wash.[2] According to the coffee shop receipts, one of the officers was at the coffee shop by 7:55 A.M. The officer's patrol cars, which were parked at the coffee shop during the shooting, would have been visible from the street.

---

[1] The ankle monitor was a bail condition for a previous offense.

[2] The State argues that Allen and Clemmons drove by the coffee shop twice before the shooting. Video footage shows several white trucks passing by the coffee shop before the shooting, but the picture is not clear enough to determine which of the trucks is Clemmons's.

Allen drove the truck to the car wash a few minutes after 8:00 A.M. A witness testified that there was only one person in the truck when it entered the car wash. Clemmons entered the coffee shop and began shooting at a little after 8:00 A.M. While Clemmons was at the coffee shop, witnesses saw Allen at the car wash, waving the sprayer at the truck without using water.

After the shooting, Clemmons arrived back at the truck on foot. He and Allen got into the truck and quickly left the car wash. They abandoned the truck in a grocery store parking lot, where police found it about an hour after the shooting. Police discovered Allen's fingerprints on the driver's side door of the truck and Clemmons's blood on the passenger side. Police also noted that the truck was not wet.

An officer fatally shot Clemmons in Seattle in the early morning of December 1. About an hour later, police arrested Allen at the New Horizons Motel in Federal Way. He was staying with Latanya Clemmons, Clemmons's sister, under the name "Randy Huey." Report of Proceedings (RP) (Apr. 28, 2011) at 3069. Police transported him to the South Hill Precinct for questioning. Allen told police several versions of what happened on November 29, eventually admitting that he was the driver of the white truck but maintaining that he did not know what Clemmons had done.

The State charged Allen with four counts of aggravated first degree murder and four counts of second degree felony murder. The trial court held a CrR 3.6 hearing to determine whether Allen's warrantless arrest was valid. It found that exigent circumstances—officer safety—justified the warrantless arrest.

During the trial, members of the public arrived wearing t-shirts that said "You will not be forgotten, Lakewood Police" and listed the victims' names. RP (Apr. 28, 2011) at 3024. Allen objected and asked that the shirts be covered up. The trial court denied Allen's motion.

3

Allen also requested an instruction on rendering criminal assistance, arguing that it is a lesser included offense of first degree murder as an accomplice. The trial court declined to give the instruction.

During closing argument, the prosecutor defined "knowledge" as it is used in the accomplice liability instruction for the jury. He stated, "if a person has information that would lead a reasonable person in the same situation to believe that a fact exists, then the jury is permitted, but not required, to find that that person acted with knowledge." RP (May 12, 2011) at 3544. The prosecutor then added, "For shorthand we're going to call that 'should have known.'" RP (May 12, 2011) at 3544-45. He used the phrase "should have known" several times during closing and rebuttal argument—over Allen's objections—and implied that the jury could find Allen guilty as an accomplice if he should have known that Clemmons was going to murder the police officers.

The trial court dismissed the second degree murder counts for insufficient evidence. The jury found Allen guilty of four counts of premeditated first degree murder. It also found that the crime was committed against law enforcement officers and that Allen or an accomplice was armed with a firearm at the time of the crimes. The trial court imposed an exceptional 420 year sentence. Allen appeals. The State cross appeals, arguing that the trial court erred by dismissing the second degree murder counts.

## ANALYSIS

### I. INSUFFICIENT EVIDENCE OF KNOWLEDGE

Allen first argues that there is insufficient evidence to prove that he knew he was assisting in the commission of a crime. Allen knew that Clemmons was threatening to shoot police officers and Allen fled the scene and hid after the shooting. Because of this and other

4

significant incriminating testimony, there is sufficient evidence to prove that Allen knew he was assisting Clemmons in the murders.

Evidence is legally sufficient to support a guilty verdict if any rational trier of fact, viewing the evidence in the light most favorable to the State, could find the elements of the charged crime beyond a reasonable doubt. *State v. Longshore*, 141 Wn.2d 414, 420-21, 5 P.3d 1256 (2000). We interpret all reasonable inferences in the State's favor. *State v. Hosier*, 157 Wn.2d 1, 8, 133 P.3d 936 (2006). Direct and circumstantial evidence carry the same weight. *State v. Varga*, 151 Wn.2d 179, 201, 86 P.3d 139 (2004). Credibility determinations are for the trier of fact and are not subject to review. *State v. Cantu*, 156 Wn.2d 819, 831, 132 P.3d 725 (2006).

A person is guilty of a crime committed by another if he is an accomplice to the commission of the crime. RCW 9A.08.020(1), (2)(c). A person is an accomplice if, with knowledge that it will promote or facilitate the commission of the crime, he solicits, commands, encourages, or requests the other person to commit the crime or aids or agrees to aid the other in planning or committing the crime. RCW 9A.08.020(3). A person knows or acts with knowledge when he is aware of facts or circumstances described by a statute defining an offense or he has information that would lead a reasonable person in the same situation to believe that such facts exist. RCW 9A.08.010(1)(b). Physical presence and assent, without more, are insufficient to establish accomplice liability. *State v. Roberts*, 80 Wn. App. 342, 355, 908 P.2d 892 (1996). But the accomplice does not have to have specific knowledge of the elements of the principal's crime. *State v. Hoffman*, 116 Wn.2d 51, 104, 804 P.2d 577 (1991); *State v. Davis*, 101 Wn.2d 654, 655, 682 P.2d 883 (1984) (holding that the State is not required to prove that the accomplice knew the principal was armed).

5

Here, there is sufficient evidence for the jury to find that Allen knew he was assisting Clemmons in the murders. In the week leading up to the murders, Allen twice heard Clemmons threaten to shoot police officers. Both times, Clemmons had displayed a gun. Allen also knew that Clemmons had removed his ankle monitor.

On the morning of the murders, Allen and Clemmons drove past the coffee shop, where police cars were parked, before going to the car wash. A witness testified that there was only one person in the truck when it pulled into the car wash. Witnesses then saw Allen waving the sprayer without water coming out of it, and, when the truck was discovered about an hour later, it was not wet. From these facts, the jury could conclude that Allen, knowing about Clemmons's threats against police, dropped Clemmons off at the coffee shop and was pretending to wash the truck until Clemmons returned from the murders.

Moreover, flight may be circumstantial evidence of guilty knowledge. *State v. Bruton*, 66 Wn.2d 111, 112, 401 P.2d 340 (1965). After the shootings, Clemmons, who had been shot and was bleeding, walked from the coffee shop to the car wash, and he and Allen got into the truck and quickly drove away. They then abandoned the truck in a grocery store parking lot a couple of miles from the car wash,[3] and Allen checked into a motel in Federal Way under the name "Randy Huey." When police found Allen, he demonstrated guilty knowledge by giving several different versions of the events on the morning of the shooting before admitting that he was the driver. There was sufficient evidence for the jury to infer Allen's knowledge that he was assisting Clemmons in the murders by driving him to and from the coffee shop, and we affirm the jury's verdict.

---

[3] Although Allen claimed that he got out of the truck a few blocks from the car wash when he noticed Clemmons bleeding, Clemmons's blood was found only on the passenger side of the truck when the truck was recovered from the grocery store parking lot.

6

II. PROSECUTORIAL MISCONDUCT

Next, Allen argues that the State committed misconduct by misstating the law regarding the level of knowledge required for accomplice liability. Because the trial court's instructions correctly stated the law regarding knowledge, any improper argument by the prosecutor was not prejudicial. We affirm.

In closing argument, after first correctly stating the knowledge instruction, the prosecutor repeatedly used the phrase "should have known" when discussing accomplice liability. Allen objected, but the trial court overruled his objections. The prosecutor again made several "should have known" comments in rebuttal argument, and again the trial court overruled Allen's objections.

During deliberation, the jury asked the court "If someone 'should have known' does that make them an accomplice?" Clerk's Papers (CP) at 2014. After seeking input from both counsel, the trial court referred the jury to its existing instructions.

The trial court had instructed the jury that

> The lawyers' remarks, statements, and arguments are intended to help you understand the evidence and apply the law. It is important, however, for you to remember that the lawyers' statements are not evidence. The evidence is the testimony and the exhibits. The law is contained in my instructions to you. You must disregard any remark, statement, or argument that is not supported by the evidence or the law in my instructions.

CP at 2017. The trial court had also instructed the jury that

> A person knows or acts knowingly or with knowledge with respect to a fact or circumstance when he or she is aware of that fact or circumstance.
> If a person has information that would lead a reasonable person in the same situation to believe that a fact exists, the jury is permitted but not required to find that he or she acted with knowledge of that fact.
> When acting knowingly is required to establish an element of a crime, the element is also established if a person acts intentionally.

7

CP at 2026. Neither party objected to these instructions.

To establish a prosecutorial misconduct claim, the defendant must prove that, in the context of the record and circumstances of the trial, the prosecutor's conduct was both improper and prejudicial. *In re Pers. Restraint of Glasmann*, 175 Wn.2d 696, 704, 286 P.3d 673 (2012). But Allen asks us to apply a divergent standard of review. He contends that we should instead apply the constitutional harmless error standard, which requires the State to prove beyond a reasonable doubt that its misconduct did not contribute to the verdict.

Our Supreme Court rejected a similar argument in *State v. Emery*, 174 Wn.2d 741, 757, 278 P.3d 653 (2012). There, the defendants argued for the constitutional harmless error standard, alleging that the prosecutor's remarks violated their right to the presumption of innocence and shifted the burden of proof. *Emery*, 174 Wn.2d at 756. The court declined to adopt the constitutional harmless error standard, reasoning that it had previously refused to adopt the standard under similar circumstances where the misconduct did not directly violate the defendant's constitutional rights. *Emery*, 174 Wn.2d at 757; *see State v. Warren*, 165 Wn.2d 17, 26 n.3, 195 P.3d 940 (2008) (declining to apply the constitutional harmless error analysis where the error involved counsel's argument over the application of instructions on reasonable doubt and the burden of proof and the error could be cured with a jury instruction and distinguishing this misconduct from that of a prosecutor violating the defendant's right to silence); *State v. Easter*, 130 Wn.2d 228, 234, 242, 922 P.2d 1285 (1996) (applying the constitutional harmless error analysis where the defendant's right to silence had been violated by testimony and closing argument regarding defendant's pre-arrest silence). The court also noted that the misconduct did not involve racial bias, *see, e.g., State v. Monday*, 171 Wn.2d 667, 680, 257 P.3d 551 (2011) (applying the constitutional harmless error standard where the prosecutor deliberately injected

8

racial bias into closing argument), and the misconduct occurred during closing argument and could not be likened to instructional error. *Emery*, 174 Wn.2d at 757-59.

The same reasoning is applicable in this case. Similar to the defendants in *Emery*, Allen alleges that the State's comments eliminated its burden of proof. The Supreme Court has twice declined to apply the constitutional harmless error analysis where the defendants have not alleged that the misconduct directly violated a constitutional right. *Emery*, 174 Wn.2d at 757; *Warren*, 165 Wn.2d at 26 n.3. Further, the misconduct did not involve racial bias and it occurred during closing argument and did not involve an instructional error. Accordingly, the constitutional harmless error standard does not apply here.

Under the established standard of review, we first consider whether the prosecutor's remarks were improper. *Glasmann*, 175 Wn.2d at 703. The prosecutor argued multiple times during closing argument that the jury could find that Allen had knowledge that his actions were furthering Clemmons's crime if Allen "should have known" his actions were furthering the crime. These statements were accompanied by PowerPoint slides that also contained the "should have known" language.[4] Allen objected to the phrase as a misstatement of the law, but the trial court overruled his objections. The State admits that it was improper for the prosecutor to use "should have known" as shorthand for knowledge. Resp't's Br. at 16-17. The jury is not required to find knowledge if the defendant "should have known"; instead, it is permitted to find knowledge if the defendant has information that would lead a reasonable person in the same situation to believe that such facts exist. *State v. Shipp*, 93 Wn.2d 510, 514, 610 P.2d 1322 (1980). We agree that the prosecutor's comments were improper.

---

[4] Several of the slides are titled "Should Have Known" and one slide crosses out the words "Premeditate, Intend, Purpose, Plan, Want, Hope, Care, Know" and leaves "Should Have Known." Ex. 351, at 5, 6.

Next, we must decide whether the prosecutor's improper remarks prejudiced Allen. *Glasmann*, 175 Wn.2d at 704. A defendant establishes prejudice by showing a substantial likelihood that the misconduct affected the jury verdict. *Glasmann*, 175 Wn.2d at 704. In determining whether the misconduct warrants reversal, we consider its prejudicial nature and cumulative effect. *State v. Boehning*, 127 Wn. App. 511, 518, 111 P.3d 899 (2005). We review a prosecutor's remarks during closing argument in the context of the total argument, the issues in the case, the evidence addressed in the argument, and the jury instructions. *State v. Dhaliwal*, 150 Wn.2d 559, 578, 79 P.3d 432 (2003). We presume that the jury followed the court's instructions. *State v. Russell*, 125 Wn.2d 24, 84, 882 P.2d 747 (1994).

We have considered a number of factors in assessing the likely prejudicial effect of the prosecutor's improper argument. First, knowledge was a key issue here and the State repeatedly misstated the law regarding knowledge during its closing argument, incorrectly emphasizing "should have known" as the standard for knowledge. And Allen properly objected to this argument. Further, the jury's question during deliberation reflects that at least some jurors focused on the State's "should have known" argument.[5]

On the other hand, the jury instructions correctly instructed the jury on knowledge and stated that the law is contained in the instructions and not the lawyer's arguments. Additionally, the State initially correctly stated the knowledge instruction during closing argument and argued throughout closing argument that Allen actually knew his actions were facilitating Clemmons's

---

[5] Allen also urges us to consider juror affidavits in deciding this issue. But a court may not consider an affidavit that relates to a factor that inheres in the verdict. *State v. Gobin*, 73 Wn.2d 206, 211, 437 P.2d 389 (1968). A factor inheres in the verdict if it concerns the jurors' mental processes, such as their motives, intents, or beliefs. *State v. Hatley*, 41 Wn. App. 789, 793, 706 P.2d 1083 (1985) (quoting *State v. Crowell*, 92 Wn.2d 143, 146, 594 P.2d 905 (1979)). Here, the affidavits relate to the jurors' mental processes in reaching the verdict; therefore, we do not consider the affidavits.

crime, accompanying this argument with evidence supporting his knowledge. Notably, the prosecutor focused on facts known to Allen: Allen twice heard Clemmons threaten to harm police if they came after him; Clemmons displayed a gun when making those threats; Clemmons had cut off his ankle monitor; Allen drove the truck past the coffee shop where the police cars were visible; Allen waited at the car wash waving the sprayer at the truck without using any water; and Allen quickly drove from the car wash when Clemmons, bleeding from a gunshot wound, returned. The State also made some references to what a reasonable person would have known. The State did not argue that any inference was mandatory. And during his closing argument, Allen countered the State's "should have known" argument by telling the jury "Well, read those instructions. He needed to know." RP (May 12, 2011) at 3604. In the context of the entire closing argument, the nuances of what Allen "should have known" versus what a reasonable person would have known based on the information known to Allen likely had no prejudicial impact on the jury. Finally, the trial court redirected the jury to the instructions, which properly stated the law, in response to its question regarding "should have known."

We also note that Allen could have requested specific curative instructions, such as an instruction specifically referring to the knowledge instruction with the correct statement of law or an instruction directly refuting the prosecutor's misstatement. Not acting on this opportunity to rectify the error, Allen agreed to the trial court's proposal of simply referring the jury back to the legally correct instructions already given. A clear curative instruction could have eliminated any possible confusion and cured any potential prejudice stemming from the prosecutor's improper remarks.

11

Considering all of these factors and the context of the total argument, we conclude that there is not a substantial likelihood that the prosecutor's misstatement affected the jury verdict. We will not reverse on this record.

III.   SUPPRESSION

Next, Allen argues that the trial court erred by failing to suppress evidence arising from the officers' warrantless entry into Allen's hotel room and Allen's warrantless arrest. Because exigent circumstances justified the officers' entry and Allen's arrest, we affirm the trial court's denial of Allen's suppression motion.

Allen does not challenge any of the trial court's findings of fact from the suppression hearing.[6] Unchallenged findings are verities on appeal. *State v. Hill*, 123 Wn.2d 641, 644, 870 P.2d 313 (1994). We review conclusions of law from a suppression hearing de novo. *State v. Gaines*, 154 Wn.2d 711, 716, 116 P.3d 993 (2005). Allen challenges the trial court's conclusions that exigent circumstances justified his detention and that it was reasonable for the officers to not take chances with their own safety.

At the suppression hearing, police testified that they learned of Allen's involvement in the shootings and his current location from informants. Based on this information, police went to room 25 of the New Horizons Motel in Federal Way, where Allen was allegedly staying, to question him. They did not have a warrant. At the motel, police asked the manager for the receipt for room 25, which was registered to "Randy Huey"—one of Allen's aliases—and had a copy of a driver's license with Allen's picture on it. CP at 807. They knocked on the door of

---

[6] Allen assigns error to four of the trial court's "Reasons for Admissibility or Inadmissability of the Evidence" "to the extent [they are] finding[s] of fact." CP at 811, Appellant's Br. at 2-3. But all of the reasons are conclusions of law relating to exigent circumstances and the reasonableness of the police's conduct rather than findings of fact.

room 25 and announced their presence, and Latanya Clemmons opened the door. Officers saw Allen inside the room, sitting on the bed next to some pillows. When he saw the officers, Allen said "I knew you were coming and coming hard." CP at 808. The officers could not see Allen's hands and he appeared to be moving toward the pillows, so a SWAT team entered the room and handcuffed him. Officers then placed him in a patrol car and drove him to the precinct for questioning.

In the absence of exigent circumstances, the Fourth Amendment prohibits police from making a warrantless and nonconsensual entry into a suspect's home in order to arrest the suspect. *State v. Eserjose*, 171 Wn.2d 907, 912, 259 P.3d 172 (2011) (citing *Payton v. New York*, 445 U.S. 573, 100 S. Ct. 1371, 63 L. Ed. 2d 639 (1980)). A guest in a hotel room is similarly entitled to constitutional protection against warrantless searches. *Stoner v. California*, 376 U.S. 483, 490, 84 S. Ct. 889, 11 L. Ed. 2d 856 (1964). Washington courts have held that "'danger to [the] arresting officer or to the public'" can constitute an exigent circumstance. *State v. Smith*, 165 Wn.2d 511, 517, 199 P.3d 386 (2009) (quoting *State v. Counts*, 99 Wn.2d 54, 60, 659 P.2d 1087 (1983)).

The State bears the burden of proving that the exigent circumstances exception applies. *Smith*, 165 Wn.2d at 517. We determine whether the evidence supports a finding of exigent circumstances by looking at the totality of the situation. *Smith*, 165 Wn.2d at 518. We consider six factors in analyzing the situation:

> (1) the gravity or violent nature of the offense with which the suspect is to be charged; (2) whether the suspect is reasonably believed to be armed; (3) whether there is reasonably trustworthy information that the suspect is guilty; (4) there is strong reason to believe that the suspect is on the premises; (5) a likelihood that the suspect will escape if not swiftly apprehended; and (6) the entry is made peaceably.

*State v. Cardenas*, 146 Wn.2d 400, 406, 47 P.3d 127 (2002). Because we analyze the totality of the situation, the State does not have to prove all six factors to show that exigent circumstances existed. *Smith*, 165 Wn.2d at 518.

Here, the evidence supports the finding that exigent circumstances permitted the warrantless entry and Allen's arrest. The offense—the shooting of four police officers—was extremely grave and violent, and the arresting officers had information from multiple sources indicating that Allen was involved. Although some of the officers knew that Clemmons had been killed before they entered Allen's motel room, Clemmons's death did not decrease the gravity of his crimes or the officers' perception of Allen's involvement in them. And, because Allen's hands were not visible and he appeared to be reaching for something under the pillows, the officers could have reasonably believed he was reaching for a gun. Further, there was a strong reason to believe that Allen was on the premises—an informant told police he was in room 25 at the motel, police found his alias on a receipt for room 25, and the driver's license picture from the receipt matched the police's picture of him. Finally, there is evidence that the officers' entry was relatively peaceable. The officers knocked and announced their presence, then waited for someone to answer the door before entering the room. *See Cardenas*, 146 Wn.2d at 408 (holding that police entered a motel room peaceably when they were in uniform, announced their presence, and entered through an unlocked window).

Police did not know whether Allen was armed, and there was no evidence that Allen was attempting to escape the motel room. But even if these two factors were not met, given the totality of the circumstances, including Allen's involvement in the shooting of four uniformed officers and simultaneous statement that he knew the officers were coming and "coming hard,"

exigent circumstances justified the police officers' warrantless entry and Allen's arrest. Therefore, the trial court correctly denied Allen's suppression motion.

IV.    LESSER INCLUDED OFFENSE

Allen contends that the trial court erred by refusing to instruct the jury on rendering criminal assistance as a lesser included offense of first degree murder as an accomplice. Because the elements of rendering criminal assistance are not necessary elements of the charged offense, this argument fails.

We apply a two-prong test to determine whether a defendant is entitled to a lesser included offense instruction: first, each element of the lesser offense must be a necessary element of the charged offense; second, the evidence must support an inference that the lesser crime was committed. *State v. Sublett*, 176 Wn.2d 58, 83, 292 P.3d 715 (2012). We view the evidence in the light most favorable to the party requesting the instruction. *Sublett*, 176 Wn.2d at 83.

Under RCW 9A.76.050,

a person "renders criminal assistance" if, with intent to prevent, hinder, or delay the apprehension or prosecution of another person who he or she knows has committed a crime or juvenile offense or is being sought by law enforcement officials for the commission of a crime or juvenile offense or has escaped from a detention facility, he or she:
(1) Harbors or conceals such person; or
(2) Warns such person of impending discovery or apprehension; or
(3) Provides such person with money, transportation, disguise, or other means of avoiding discovery or apprehension; or
(4) Prevents or obstructs, by use of force, deception, or threat, anyone from performing an act that might aid in the discovery or apprehension of such person; or
(5) Conceals, alters, or destroys any physical evidence that might aid in the discovery or apprehension of such person; or
(6) Provides such person with a weapon.

A person is guilty of a crime as an accomplice if, with knowledge that it will promote or facilitate the commission of the crime, he solicits, commands, encourages, or requests another to commit the crime or aids in planning or committing the crime. RCW 9A.08.020(1), (2), (3)(a).

The elements of rendering criminal assistance are not necessary elements of first degree murder as an accomplice because both the mental states and the required acts differ for each offense. Rendering criminal assistance requires a greater degree of culpability—intent—than accomplice liability, which requires only knowledge. *Compare* RCW 9A.76.050 *with* RCW 9A.08.020. Further, rendering criminal assistance requires proof of the defendant's acts after a crime has been committed, but a person is guilty as an accomplice if he assists in the planning or commission of the crime, acts which do not necessarily require assistance after the fact. *Compare* RCW 9A.76.050 *with* RCW 9A.08.020. The trial court correctly denied Allen's lesser included offense instruction.

V.      AGGRAVATING FACTOR

Next, Allen challenges the trial court's application of an aggravating factor to enhance his sentence, asserting that the accomplice liability statute cannot be the basis for imposing a sentence enhancement. Because the enhancement statute at issue here refers to the victims' statuses rather than the defendant's acts, we hold that the enhancement was properly applied to Allen.

The jury found the following aggravating factor under RCW 9.94A.535(3)(v): the crime was committed against law enforcement officers who were performing their official duties at the time of the crime and the defendant knew the victims were law enforcement officers. The trial court used this finding to impose an exceptional sentence.

16

Washington courts have recognized that the accomplice liability statute itself cannot be the basis for imposing a sentence enhancement because it imposes liability only for *the crime* of another, and sentence enhancements do not define crimes. *State v. Pineda-Pineda*, 154 Wn. App. 653, 661, 226 P.3d 164 (2010). Therefore, "the authority to impose a sentencing enhancement on the basis of accomplice liability must come from the specific enhancement statute." *Pineda-Pineda*, 154 Wn. App. at 661.

For example, in *Pineda-Pineda*, Division One vacated the defendant's school zone enhancement, holding that the enhancement did not apply to an absent accomplice. 154 Wn. App. at 664. There, the defendant was convicted as an accomplice to delivery of a controlled substance after he facilitated a drug deal between his accomplices and the buyer. *Pineda-Pineda*, 154 Wn. App. at 658, 659. The defendant was not present at the actual delivery, which took place within 25 feet of a school bus stop. *Pineda-Pineda*, 154 Wn. App. at 659. The jury found that the defendant delivered a controlled substance within 1,000 feet of a school bus stop, and the trial court imposed an exceptional sentence under RCW 69.50.435, which states

> (1) Any person who violates RCW 69.50.401 by . . . delivering, or possessing with the intent to . . . sell or deliver a controlled substance.
> . . . .
> (c) Within one thousand feet of a school bus route stop designated by the school district; . . .
> may be punished by a fine . . . or by imprisonment of up to twice the imprisonment otherwise authorized by this chapter.

*Pineda-Pineda*, 154 Wn. App. at 659. Division One held that this statute does not explicitly authorize imposition of the sentence enhancement on an accomplice; accordingly, the defendant's own acts must form the basis for the enhancement. *Pineda-Pineda*, 154 Wn. App. at 664. Because the defendant was not physically present at the delivery, the school bus stop enhancement was improper. *Pineda-Pineda*, 154 Wn. App. at 664.

This case is distinguishable from *Pineda-Pineda*. In *Pineda-Pineda*, the sentence enhancement was based on the defendant's conduct. Therefore, the State had to show that the defendant actually engaged in the conduct, namely, delivering drugs within a school zone. By contrast, the sentence enhancement here is based on the victims' statuses as police officers and not on the defendant's conduct. *See* RCW 9.94A.535(3)(v). Accordingly, the enhancement statute allows for imposition of accomplice liability even if Allen was not physically present at the shooting. The victims' statuses as officers were not contested, and the enhancement was properly applied to Allen.

## VI. SPECTATOR T-SHIRTS

Finally, Allen argues that the spectators' t-shirts deprived him of his right to a fair trial. Because the t-shirts did not convey a message of guilt or innocence, they did not prejudice Allen's fair trial right and the trial court's decision to allow them was not manifestly unreasonable.

We review the trial court's decision to allow the spectators' t-shirts to determine whether the decision was manifestly unreasonable or based on untenable grounds or reasons. *State v. Lord*, 161 Wn.2d 276, 283-84, 165 P.3d 1251 (2007). We must consider whether the courtroom scene presented to the jury was "'so inherently prejudicial as to pose an unacceptable threat to defendant's right to a fair trial.'" *Lord*, 161 Wn.2d at 285 (quoting *Holbrook v. Flynn*. 475 U.S. 560, 572, 106 S. Ct. 1340, 89 L. Ed. 2d 525 (1986)) (emphasis omitted).

Our Supreme Court has held that silent displays of affiliation by trial spectators that do not explicitly advocate guilt or innocence are permissible. *Lord*, 161 Wn.2d at 289; *In re Pers. Restraint of Woods*, 154 Wn.2d 400, 416, 418, 114 P.3d 607 (2005). In *Lord*, trial spectators wore buttons with a picture of the victim. 161 Wn.2d at 282. The court held that the buttons did

18

not prejudice the defendant's fair trial right because they did not convey any message regarding guilt or innocence. *Lord*, 161 Wn.2d at 289. Additionally, the defendant failed to make a motion for mistrial or a curative jury instruction, which, the court noted, has been held to constitute waiver. *Lord*, 161 Wn.2d at 291.

The t-shirts at issue here are similarly permissible. The t-shirts said "You will not be forgotten, Lakewood Police" and listed the names of the victims. RP (Apr. 28, 2011) at 3024. Although they did have writing on them, they did not convey a message of guilt or innocence; they were merely worn in remembrance of the victims. Moreover, like the defendant in *Lord*, Allen did not move for a mistrial or request a curative instruction and thereby waived his objections. The trial court's decision to allow the t-shirts was not manifestly unreasonable and we affirm.

## VII. SAG

In his SAG, Allen first argues that the evidence is insufficient to establish the mental state and acts required for first degree murder as either an accomplice or principal. The State argued only that Allen was an accomplice to the murders; accordingly, it had to prove only that Allen had knowledge that he was promoting or facilitating the crime and that he aided Clemmons in planning or committing the crime. RCW 9A.08.020(3). We discussed the sufficiency of the evidence regarding knowledge above and we do not consider it again here. Additionally, there is sufficient evidence that Allen aided Clemmons in committing the crime—he drove Clemmons to and from the murder scene. *See State v. Rainwater*, 75 Wn. App. 256, 257 n.1, 876 P.2d 979 (1994) (holding that getaway driver was an accomplice to theft). There is sufficient evidence that Allen acted as an accomplice. His first argument fails.

42257-3-II

Next, Allen argues that his sentence enhancement is invalid because RCW 9.94A.535(3)(v) is an element of the crime he was convicted of. This argument is incorrect. Allen was convicted of premeditated first degree murder. Premeditated first degree murder requires the State to prove that Allen or an accomplice acted with premeditated intent to cause the death of the victim and that the victim died as a result. RCW 9A.32.030(1)(a). The victims' statuses as police officers—the aggravating factor under RCW 9.94A.535(3)(v)—is not an element of first degree murder. Therefore, Allen's second argument also fails.

VIII.    STATE'S CROSS APPEAL

In its cross appeal, the State argues that the trial court erred by dismissing the felony murder counts for insufficient evidence. In the event that we remand for a new trial, the State asks us to reverse the trial court's dismissal of the felony murder counts. Because we affirm, it is not necessary to reach this issue.

Affirmed.

_____
enoyar, J.

I concur:

_____
Verellen, J.

20

MAXA, J. (dissenting in part, concurring in part) — I concur with the majority on all of the issues presented except prosecutorial misconduct. I cannot agree that the prosecutor's repeated misstatements of the law regarding the level of knowledge the State must prove to convict Allen as an accomplice – which the State admitted constituted misconduct – did not prejudice Allen. I dissent on that issue. I conclude that the misstatements were repeated so often and were so significant in the context of the trial evidence that there was a substantial likelihood that the jury's verdict was affected. Therefore, I would reverse and remand for a new trial.

## A.    PROSECUTORIAL MISCONDUCT

A defendant has a fundamental right to a fair trial under the Sixth and Fourteenth Amendments to the United States Constitution and article I, section 22 of the Washington State Constitution. *In re Pers. Restraint of Glasmann*, 175 Wn.2d 696, 703, 286 P.3d 673 (2012). Prosecutorial "misconduct" – whether deliberate or inadvertent – can deprive a defendant of this constitutional right. *Glasmann*, 175 Wn.2d at 703-04.

To prevail on a prosecutorial misconduct claim, a defendant bears the burden of proving that the prosecutor's conduct was both improper and prejudicial. *Glasmann*, 175 Wn.2d at 704. In analyzing prejudice the conduct is not viewed in isolation, but "in the context of the total argument, the issues in the case, the evidence, and the instructions given to the jury." *State v. Warren*, 165 Wn.2d 17, 28, 195 P.3d 940 (2008). If the defendant objected at trial to the conduct, the prejudice standard is whether the conduct "resulted in prejudice that had a substantial likelihood of affecting the jury's verdict." *State v. Emery*, 174 Wn.2d 741, 760, 278 P.3d 653 (2012).[7] If the defendant did not object at trial, the defendant is deemed to have waived

---

[7] I agree with the majority that the constitutional harmless error standard is inapplicable here. *Emery*, 174 Wn.2d at 756-57. Majority at 10.

any error unless "the prosecutor's misconduct was so flagrant and ill intentioned that an instruction could not have cured the resulting prejudice." *Emery*, 174 Wn.2d at 760-61. Significantly, when deciding whether prosecutorial misconduct requires reversal it is immaterial whether there is sufficient evidence to justify upholding the jury's verdict. *Glasmann*, 175 Wn.2d at 711.

Misconduct that is relatively minor or insignificant is not grounds for reversal. Our Supreme Court has noted that " '[a] defendant is entitled to a fair trial but not a perfect one.' " *State v. Davis*, 175 Wn.2d 287, 345, 290 P.3d 43 (2012) (internal quotation marks omitted) (quoting *Brown v. United States*, 411 U.S. 223, 231-32, 93 S. Ct. 1515, 36 L. Ed. 2d 208 (1973)), *cert. denied*, No. 12-9685, 2013 WL 1490614 (U.S. Wash. Oct. 7, 2013); *see also State v. Garcia*, __ Wn. App. __, 313 P.3d 422, 430 (2013), *petition for review filed*, No. 89691-7 (Wash. Dec. 20, 2013).

B.    IMPROPER ARGUMENT

The prosecutor's misconduct in this case was misstating what level of knowledge the State was required to prove to convict Allen as an accomplice. Under the Washington accomplice liability statute, a person is an accomplice to a crime only if he or she has actual, subjective knowledge that his or her conduct will promote or facilitate the commission of the charged crime. RCW 9A.08.020 (3)(a); RCW 9A.08.010(1)(b); *see State v. Roberts*, 142 Wn.2d 471, 511, 14 P.3d 713 (2000); *In re Pers. Restraint of Sarausad*, 109 Wn. App. 824, 838 & n.6, 39 P.3d 308 (2001). If the defendant has information that would lead a reasonable person to have such knowledge, the jury is allowed *but is not required* to infer that the defendant had actual, subjective knowledge. *State v. Shipp*, 93 Wn.2d 510, 516, 610 P.2d 1322 (1980); *Sarausad*, 109 Wn. App. at 838 n.6. The trial court instructed the jury on this concept. But

comparing the defendant to an ordinary person creates only an inference, and the jury still must find that the defendant acted with actual, subjective knowledge. *Shipp*, 93 Wn.2d at 517 (stating that even if the jury finds that an ordinary person would have had knowledge under the circumstances, the jury must still be allowed to conclude that the defendant was less attentive or intelligent than the ordinary person).

At the beginning of his closing argument, the prosecutor properly stated the law regarding actual knowledge – that if a reasonable person would have known, the jury was permitted but not required to find that Allen acted with knowledge. However, throughout the remainder of closing argument he argued both directly and indirectly that a jury could convict Allen if it found *either* that he knew *or* that he should have known that Clemmons would murder the officers. Instead of arguing that the jury could *infer* Allen's knowledge from what a reasonable person would know, the prosecutor argued that if a reasonable person would have known and Allen should have known, then Allen *was* an accomplice.

> If a person had information and a reasonable person would have known, then he knew. Because it's really hard to get direct evidence of somebody's knowledge, right?

Report of Proceedings (RP) at 3545.

> [W]hat a jury should do is look at all the facts and all the circumstances surrounding it and say, well, what would a reasonable person know.
> And *if a reasonable person would have known* that Maurice Clemmons was going to go in there and kill those cops, then *his getaway driver knew that, too.*

RP at 3545 (emphasis added).

> And under the law, *even if he doesn't actually know*, if a reasonable person would have known, he should have known, he's guilty.
> So you're an accomplice if you help another person commit a crime and *you know or should have known* that your actions are going to help. And Mr. Allen is an accomplice because he helped Maurice Clemmons commit these murders, and

23

*he knew or should have known* that his actions were going to help these murders happen.

RP at 3546 (emphasis added).

So the question becomes – and really, the question in the case is *did he know or should he have known.* Did he know or would a reasonable person have known? Well, did he know? Should he have known?

RP at 3548-49 (emphasis added).

Information that would lead a reasonable person in the same situation to believe. He knew. And *he should have known.*

RP at 3566 (emphasis added).

The PowerPoint slides that accompanied the prosecutor's argument were just as significant. The jury repeatedly was shown slides stating that Allen was an accomplice if he knew *or should have known.* The most egregious were two sequential slides entitled "Should Have Known" which listed several words potentially descriptive of Allen's mental state, the last two of which were "Know" and "Should Have Known." Ex. 352, at 5-6. All the words were crossed out – including "Know" – except for "Should Have Known." Ex. 352, at 5. The message was clear. The jury did not have to find that Allen actually knew Clemmons would murder the officers, only that he should have known.

The same argument was repeated in the rebuttal argument by a different prosecutor, along with additional PowerPoint slides.

This is the knowledge instruction. What did he know, what should he have known. . . .
. . . Should have known there were police inside the Forza. . . . Should have known those police . . . were going to be killed by Clemmons. . . .
. . . He should have known that Clemmons was going to carry out this plan.

RP at 3614-15. Four slides were titled "Defendant Should Have Known," none of which indicated that the jury had to find actual knowledge. Ex. 354, at 3-4.

24

Allen argues that the prosecutor intentionally attempted to mislead the jury. I do not necessarily agree. A closing argument is not the same as a written brief, where the author can carefully craft legal statements and ensure they are correct. During closing a prosecutor is on his or her feet arguing in the "heat of the moment," and as a result some misstatements may occur. Although the slide presentation – prepared in advance of closing argument – included multiple references to a "should have known" standard, those slides would not have been improper if the prosecutor had carefully explained the correct legal standard when discussing them. The prosecutor here simply may have gone astray while making an honest attempt to state the law regarding accomplice liability. However, for purposes of a prosecutorial misconduct claim whether statement is intentional or inadvertent is immaterial to determining whether the statement was improper. *Cf. State v. Ish*, 170 Wn.2d 189, 195 n.6, 241 P.3d 389 (2010) (refusing to draw fine lines between error and misconduct). My dissent here is not based on a finding that the prosecutor engaged in deliberate misconduct.

The State correctly acknowledged on appeal that the prosecutors' arguments were improper. Therefore the only issue is whether those arguments prejudiced Allen.

C.    PREJUDICE

Allen objected twice to the "should have known" arguments on the basis that they were incorrect statements of the law, once during closing and once during rebuttal. RP at 3545-46; RP at 3614. The trial court overruled both objections, stating, "It's argument." RP at 3546; RP at 3614. As a result, the prejudice standard is whether the improper arguments had a substantial likelihood of affecting the jury's verdict. *Emery*, 174 Wn.2d at 760.

1. Factors Showing Prejudice

Several factors, considered together, compel the conclusion that the improper arguments prejudiced Allen's constitutional right to a fair trial. First, and most important, the misconduct was not an isolated incident. The arguments were made repeatedly and persistently, in both closing argument and rebuttal argument. The prosecutor told the jury several times that it could convict Allen if he should have known that Clemmons would murder the officers. The court in *Glasmann* acknowledged that misconduct can be so pervasive that prejudice cannot be avoided, even with a curative instruction. " '[T]he cumulative effect of repetitive prejudicial prosecutorial misconduct may be so flagrant that no instruction or series of instructions can erase their combined prejudicial effect.' " *Glasmann*, 175 Wn.2d at 707 (alteration in original) (quoting *State v. Walker*, 164 Wn. App. 724, 737, 265 P.3d 191 (2011), *adhered to on remand*, noted at 173 Wn. App. 1027, *review denied*, 177 Wn.2d 1026 (2013)).

Second, the improper arguments were accompanied by slides that repeated the arguments in visual form. The court in *Glasmann* emphasized that visual images can be especially prejudicial when used during closing argument:

> Highly prejudicial images may sway a jury in ways that words cannot. Such imagery then, may be very difficult to overcome with an instruction. Prejudicial imagery may become all the more problematic when displayed in the closing arguments of a trial, when the jury members may be particularly aware of, and susceptible to, the arguments being presented.

175 Wn.2d at 709-10 (internal citations omitted).

Third, the improper arguments involved an incorrect statement of the law of accomplice liability. "The prosecuting attorney misstating the law of the case to the jury is a serious irregularity having the grave potential to mislead the jury." *State v. Davenport*, 100 Wn.2d 757, 763, 675 P.2d 1213 (1984); *see also Walker*, 164 Wn. App. at 736. In *Warren* the prosecutor

repeatedly misstated the burden of proof and made misleading statements about the presumption of innocence. 165 Wn.2d at 23, 25. Fortunately, in that case after the third misstatement the trial court interrupted and gave a lengthy curative instruction. *Warren*, 165 Wn.2d at 24. On appeal, our Supreme Court stated that it would have found prejudice but for the curative instruction. "Had the trial [court] not intervened to give an appropriate and effective curative instruction, we would not hesitate to conclude that such a remarkable misstatement of the law by a prosecutor constitutes reversible error." *Warren*, 165 Wn.2d at 28.

Fourth, the State's "should have known" argument was the focus of the entire case. The State produced no direct evidence that Allen actually knew that Clemmons was going to murder the officers. The State did argue that circumstantial evidence showed that Allen had actual knowledge, but its primary argument was that Allen was guilty because he should have known the murders would occur. Because the "should have known" issue was so critical, it is more likely that a misstatement regarding the law would affect the verdict.

Finally, the jury's question about accomplice liability demonstrated that at least one member of the jury considered the improper arguments. The question read, "If someone 'should have known' does that make them an accomplice?" Clerk's Papers (CP) at 2014. This question shows that the prosecutor's misstatements made an impact because the "should have known" language was not used in the instructions and, therefore, must have come from closing argument.

2. Majority Arguments Against Prejudice

The majority makes four arguments in support of its conclusion that the improper arguments did not prejudice Allen. Majority at 10-12. First, the majority states that the

27

trial court properly instructed the jury that the law is contained in the instructions and not in arguments of counsel. Majority at 10. However, as the court noted in *Glasmann*, the jury may be more susceptible to prejudicial conduct during closing argument. 175 Wn.2d at 709-10. Further, we have emphasized that "[i]f a self-serving comment at the start of a closing argument could save the prosecutor from repeated, intentional, improper comments, there would be no disincentive to committing prosecutorial misconduct." *Walker*, 164 Wn. App at 739 n.8.

Second, the majority points out that the State initially stated the law correctly and did argue that Allen had actual knowledge as well as that he should have known. Majority at 10-11. However, correctly stating the law once hardly can compensate for misstating the law multiple other times. And making a legitimate argument that Allen had actual knowledge is immaterial because the State improperly argued in the alternative that the jury could convict based on actual knowledge or based on a finding that Allen should have known.

Third, the majority notes that Allen countered the State's argument in his closing by telling the jury to "read th[e] instructions" and that Allen "needed to know." RP at 3604. Majority at 11. However, it is difficult to conclude that Allen's attempt to counter the prosecutor's improper arguments would have neutralized any impact on the jury given the pervasive nature of the misstatements.

Fourth, the majority states that the trial court "redirected the jury to the instructions, which properly stated the law, in response to its question regarding 'should have known.' " Majority at 11. However, the trial court did not specifically direct the jury to the correct instruction. The trial court merely wrote, "Please refer to the court's

28

instructions." CP at 2012. Further, the knowledge instruction does not reference the phrase "should have known" that the State repeated so often. As a result, it is naive to assume that the jury figured out the correct law on its own in the face of the State's relentless misstatements.

3. Curative Instruction

The majority also notes that Allen could have requested specific curative instruction and that a clear instruction could have eliminated any possible confusion and cured any potential prejudice. Majority at 11. However, when the defendant objects to improper conduct, whether an instruction could have cured the prejudice is not the standard. The test for prejudice is whether the conduct resulted in prejudice that had a substantial likelihood of affecting the jury's verdict. *Emery*, 174 Wn.2d at 760. The availability of a curative instruction is only relevant when the defendant *fails* to object. *Emery*, 174 Wn.2d at 760-61. Further, there is no indication that the trial court would have given a curative instruction here even if requested. The trial court summarily rejected Allen's objections to the "should have known" arguments, and the trial court apparently believed that the prosecutor's arguments were proper.

In any event, I conclude that an appropriate instruction may not have cured the prejudice here. The improper statement of the law was repeated so often that it became a theme of the State's case. Additionally, the State's misstatement of the law was on a crucial issue given the evidence presented at trial. And the prosecutor's arguments likely succeeded in affecting the jury, causing it to consider finding that Allen was an accomplice because he should have known Clemmons would murder the officers. As our Supreme Court noted in Glasmann, repetitive prejudicial prosecutorial misconduct may

29

be so flagrant that no instruction can eliminate the potential prejudice. 175 Wn.2d at 707. Under the circumstances of this case, even a detailed instruction may not have eliminated the possibility that the improper arguments would affect the verdict.

D.    CONCLUSION

The murders of officers Griswold, Renninger, Owens and Richards profoundly impacted the people in Pierce County and across the state. I fully understand and support the public's interest in prosecuting, convicting and punishing everyone who knowingly assisted Clemmons. However, despite the horrifying nature of this crime, the quest for a conviction cannot and should not trump a defendant's constitutional right to a fair trial.

Further, the courts have a constitutional obligation to intervene when a prosecutor's improper conduct creates a significant risk of prejudice to the defendant. Only if we are willing to reverse cases involving significant prosecutorial misconduct will we "give substance to our message that 'prejudicial prosecutorial tactics will not be permitted,' and our warning that prosecutors must avoid improper, prejudicial means of obtaining convictions will not be empty words." *Glasmann*, 175 Wn.2d at 712-13 (quoting *State v. Charlton*, 90 Wn.2d 657, 665, 585 P.2d 142 (1978)).

I would reverse and remand this case for a new trial. The jury must be allowed to evaluate the evidence of Allen's actual knowledge, including consideration of an inference of actual knowledge based on what an ordinary person would know, without

30

being mislead by improper "should have known" arguments. It may be that a jury once again would convict Allen as an accomplice after considering all the evidence and proper arguments. But that conviction would be the result of a fair trial.

_____
MAXA, J.