IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION ONE

STATE OF WASHINGTON,       )     No. 70324-2-I
                                )
           Respondent,   )
                                )
         v.                      )     UNPUBLISHED OPINION
                                )
CURTIS JOHN TANZY,          )
                                )
           Appellant.     )     FILED: February 2, 2015

SCHINDLER, J. — A jury found Curtis John Tanzy guilty of assault in the second

degree of Steven Carter. By special verdict, the jury found the injuries exceeded the

level of harm necessary to constitute substantial bodily harm. Tanzy appeals, asserting

the State did not prove beyond a reasonable doubt that he acted as an accomplice or

that he caused substantial bodily harm. Because sufficient evidence supports finding

Tanzy acted as an accomplice and caused substantial bodily harm, and the arguments

Tanzy asserts in his statement of additional grounds are without merit, we affirm.

FACTS

On the night of June 10, 2012, Steven Carter and Chris Glosecki went to Empire

Lounge to get together with Tessa Engler after her bartending shift ended. Carter and

Glosecki had several drinks while they waited for Engler. After Engler closed the bar

around 10:30 p.m., the three friends walked to Belltown Pizza.

Belltown Pizza was fairly busy that night. A large group of friends was sitting at two tables near the back wall of the bar. Curtis John Tanzy was part of the large group. Carter, Engler, and Glosecki sat at a nearby table. Glosecki commented that one of the women in the group was pretty, and Carter encouraged him to buy her a drink. When Glosecki refused, Carter asked their server to deliver a drink to the woman on behalf of Glosecki. About an hour later, Engler began talking to two women who were part of the large group. The two women invited Carter and Engler to go outside to smoke a cigarette. As they walked to the door to go outside, Tanzy followed them.

Justin Rosas was on the sidewalk outside of Belltown Pizza with his skateboard. Carter, Engler, and the two women stood in a circle on the sidewalk near Rosas. Carter stood facing the street with his back to the patio railing. Rosas held out a cigarette for Tanzy, and Tanzy walked straight up to Rosas. Tanzy took the cigarette and talked to Rosas. Tanzy then moved to lean against the patio railing directly behind Carter. Meanwhile, Rosas walked the other way and leaned against a parking meter.

Glen Freeman, a street musician, approached Carter, Engler, and the two women. Freeman lit a cigarette for one of the women. As Engler moved toward Freeman to light her cigarette, Tanzy punched Carter in the head. Carter fell forward, landing face-down on the sidewalk. Carter rolled over with his hands on his face. Engler spun around to see what happened, handed her cigarette to one of the women, and approached Carter to check on him.

Tanzy walked down the sidewalk away from Belltown Pizza. Rosas then moved next to Carter and leaned against a parked car. When Engler turned around to take her

2

cigarette back, Rosas slammed his skateboard across Carter's face. Rosas fled in the opposite direction of Tanzy.

Freeman ran inside Belltown Pizza to get help. Engler knelt on the ground to help Carter, who was bleeding profusely. Engler rolled Carter over onto his side to stop him from choking on the blood.

Freeman and several others followed Tanzy down the street to stop him from getting away, but Tanzy eventually eluded them by going into a nearby night club. The police found Rosas about a block away from Belltown Pizza in the direction Tanzy had fled.

Carter went to the hospital with extensive facial injuries. Carter suffered "a fracturing of all the bones in between the eye sockets," including the nasal bones. A craniofacial plastic surgeon repositioned the facial bones and placed six titanium plates and screws "across the fractures to hold them into position."

The State charged "JUSTIN A. ROSAS and CURIS JOHN TANZY, and each of them, together with others," with assault in the second degree in violation of RCW 9A.36.021(1)(a). Rosas pleaded guilty. By amended information, the State charged Tanzy with assault in the second degree, alleging that "TANZY, together with others, in King County Washington, on or about June 10, 2012, did intentionally assault another and thereby recklessly inflict substantial bodily harm upon Steven Carter." The State also alleged as an aggravating circumstance that "the injuries of the victim of the current offense substantially exceeded the level of bodily harm necessary to satisfy the elements of the crime."

A number of witnesses testified during the four-day trial, including Freeman, Carter, Engler, police officers, and medical doctors. The court admitted into evidence the videotape recordings from three surveillance cameras at Belltown Pizza. One surveillance camera was located inside Belltown Pizza and angled toward the back wall of the bar. The second camera was located just inside the front doorway, and the third camera was located outside and angled toward the sidewalk.

Freeman testified he plays music outside Belltown Pizza "[a]lmost every night," and he had seen Tanzy "quite a few times" before. Freeman testified that Tanzy and Rosas were together that night and that he saw them outside talking to each other shortly before the assault.

Carter testified he had 8 to 10 alcoholic drinks that night and has no memory of "what happened after walking outside" Belltown Pizza. Carter testified, "I remember getting about two steps outside the door and then waking up on the sidewalk."

Engler testified that when Rosas struck Carter in the face with the skateboard, "Steve's face exploded in blood." Engler stated that she "knelt down to try to attend [to] Steve as fast as possible" and that she "tried to isolate Steve's neck and head because that's where the injury was." Engler testified Carter "started to choke on the blood that was running down his nose . . . . So what I did is sort of put his arm over and roll him to the side so he [could] cough up all that blood."

Seattle Police Department Officer Matthew Newsome testified that Carter "looked like a bloody mess" and was "struggling to stay conscious." The doctor who performed facial surgery on Carter testified that the fractures were "consistent with a single blow to the face."

.The court instructed the jury on assault in the second degree and accomplice liability. Jury instruction 14 states:

> The State alleges that the defendant or an accomplice committed multiple acts of Assault in the Second Degree. To convict the defendant of Assault in the Second Degree, one particular act of Assault 2nd degree must be proved beyond a reasonable doubt, and you must unanimously agree as to which act has been proved. You need not unanimously agree that the defendant committed all the acts of Assault in the Second Degree.

At the request of the defense, the court also instructed the jury on the lesser included offense of assault in the fourth degree.

In closing argument, the defense attorney argued that Tanzy acted independently from Rosas and that "Rosas alone committed the crime of assault in the second degree." The defense conceded Tanzy was "guilty of assault in the fourth degree, the crime for which he is responsible," but argued he was not responsible for Carter's extensive injuries because the punch did not cause Carter to lose consciousness.

The jury found Tanzy guilty of assault in the second degree. The jury also returned a special verdict finding the State proved the aggravating circumstance that Carter's injuries "substantially exceed the level of bodily harm necessary to constitute substantial bodily harm." Tanzy appeals.

## ANALYSIS

Tanzy contends the State did not prove he was guilty of assault in the second degree. The State must prove each essential element of the crime beyond a reasonable doubt. In re Winship, 397 U.S. 358, 364, 90 S. Ct. 1068, 25 L. Ed. 2d 368 (1970); State v. Oster, 147 Wn.2d 141, 146, 52 P.3d 26 (2002). In deciding whether sufficient evidence supports a conviction, we view the evidence in the light most favorable to the State to determine whether any rational trier of fact could have found

the essential elements of the crime beyond a reasonable doubt. State v. Salinas, 119 Wn.2d 192, 201, 829 P.2d 1068 (1992).

A challenge to the sufficiency of the evidence admits the truth of the State's evidence. Salinas, 119 Wn.2d at 201. "[A]ll reasonable inferences from the evidence must be drawn in favor of the State and interpreted most strongly against the defendant." Salinas, 119 Wn.2d at 201. We defer to the trier of fact on "issues of conflicting testimony, credibility of witnesses, and the persuasiveness of the evidence." State v. Thomas, 150 Wn.2d 821, 874-75, 83 P.3d 970 (2004), abrogated in part on other grounds by Crawford v. Washington, 541 U.S. 36, 124 S. Ct. 1354, 158 L. Ed. 2d 177 (2004).

To convict Tanzy of assault in the second degree in violation of RCW 9A.36.021(1)(a),[1] the State had the burden of proving beyond a reasonable doubt that Tanzy (1) intentionally assaulted Carter and (2) recklessly caused "substantial bodily harm." See State v. McKague, 172 Wn.2d 802, 805, 262 P.3d 1225 (2011). "Substantial bodily harm" includes injury "which causes a temporary but substantial loss or impairment of the function of any bodily part or organ, or which causes a fracture of any bodily part." RCW 9A.04.110(4)(b).

Under the accomplice liability statute, an individual is guilty of a crime committed by another if he or she "is an accomplice of such other person in the commission of the

---

[1] RCW 9A.36.021(1) states, in pertinent part:

A person is guilty of assault in the second degree if he or she, under circumstances not amounting to assault in the first degree:

    (a) Intentionally assaults another and thereby recklessly inflicts substantial bodily harm.

crime." RCW 9A.08.020(2)(c). An individual is an accomplice if:

> (a) With knowledge that it will promote or facilitate the commission of the crime, he or she:
> (i) Solicits, commands, encourages, or requests such other person to commit it; or
> (ii) Aids or agrees to aid such other person in planning or committing it.

RCW 9A.08.020(3).

Tanzy asserts the State did not prove beyond a reasonable doubt that he acted as an accomplice or that he caused substantial bodily harm. Tanzy concedes he punched Carter but contends insufficient evidence supports finding that he acted as an accomplice to Rosas' assault of Carter with the skateboard or that his punch caused Carter to lose consciousness.

Viewing the evidence in the light most favorable to the State, a rational trier of fact could find the State proved beyond a reasonable doubt that Tanzy acted as an accomplice and caused substantial bodily harm to Carter.

Engler testified Tanzy and Rosas were together and part of the large group of friends sitting against the back wall of the bar. Freeman testified he saw Tanzy and Rosas walk outside together less than 10 minutes before the assault. Freeman testified that Tanzy and Rosas talked briefly before Tanzy went back inside by himself.

Surveillance video from inside Belltown Pizza shows Tanzy enter the bar alone and walk toward the group at the back wall. After Tanzy joins the group, two women from the group approach Carter and Engler and then lead them outside. Tanzy walks directly behind them to the sidewalk. When Tanzy walks through the front door, Rosas immediately holds his arm out to offer Tanzy a cigarette. Tanzy walks straight to Rosas

and takes the cigarette from him. The videotape shows Tanzy and Rosas standing side-by-side a few feet away from Carter, Engler, and the two women.

The videotape shows Tanzy and Rosas switch places and move into position. Rosas stands against a parking meter watching the group. After Tanzy punches Carter, Rosas slowly moves toward Carter. Carter is lying on his back with his head near the edge of the sidewalk. Rosas leans against a parked car, watching the commotion. When Engler turns away, Rosas picks up his skateboard and slams it down across Carter's face.

Tanzy asserts insufficient evidence supports finding he acted as an accomplice because the State did not prove he knew Rosas would assault Carter with the skateboard. But an accomplice need not have specific knowledge of every element of the crime committed by the principal, " 'provided he has general knowledge of that specific crime.' " In re Pers. Restraint of Domingo, 155 Wn.2d 356, 365, 119 P.3d 816 (2005) (quoting State v. Roberts, 142 Wn.2d 471, 512, 14 P.3d 713 (2000)); State v. Allen, 178 Wn. App. 893, 903, 317 P.3d 494 (2014). Viewed in the light most favorable to the State, the jury could find Tanzy knew Rosas planned to assault Carter.

Sufficient evidence also supports finding that Carter briefly lost consciousness after Tanzy punched him in the head. The surveillance video shows that when Tanzy punched him, Carter fell straight forward and landed face-down on the sidewalk. After Carter rolled over onto his back, he was motionless for a moment. He began to move his legs just before Rosas hit him with the skateboard.

Freeman testified that Carter did not put his hands out to brace himself as he fell to the ground. Freeman described the manner in which Carter fell as "a dead man's

8

fall" where "all of a sudden, your whole body, everything stops, . . . it's just bam and you're gone."

Engler testified that when Carter fell to the ground after the punch, he was "laid out completely." She stated that between the punch and the skateboard attack, "what was really notable was his eyes were just rolled in the back of his head completely out." Engler testified that Carter did not say anything between the two attacks and did not put his hands up to protect himself from the skateboard.

Officer Newsome testified that when he arrived in response to the 911 call, Carter was going "in and out" and "struggling to stay conscious."

Viewing the evidence in the light most favorable to the State, a rational trier of fact could find Tanzy guilty of assault in the second degree.[2]

We affirm.

WE CONCUR:

---

[2] In a statement of additional grounds, Tanzy asserts that the court's evidentiary rulings demonstrated bias and that defense counsel provided ineffective assistance by failing to object. Tanzy also asserts prosecutorial misconduct because the State called a witness who was disclosed in discovery but was not included on the witness list. The record does not establish ineffective assistance of counsel or prosecutorial misconduct or show that the court abused its discretion in making evidentiary rulings.