# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

# DIVISION II

| | |
|---|---|
| STATE OF WASHINGTON, | No. 52629-8-II |
| Respondent, | |
| v. | UNPUBLISHED OPINION |
| JONATHAN LEE SUTLEY RHOADS, | |
| Appellant. | |

MAXA, J. – Jonathan Sutley Rhoads[1] appeals his conviction of attempting to elude a pursuing police vehicle and an interest accrual provision for the legal financial obligations (LFOs) in his judgment and sentence. His conviction arose from an incident in which he failed to stop during a pursuit after a deputy sheriff observed him speeding.

We hold that (1) the prosecutor's initial misstatement regarding the length of the pursuit did not constitute misconduct because he corrected the misstatement on rebuttal; (2) the prosecutor's statement regarding the standard for determining a knowing violation was improper, but Sutley Rhoads waived his challenge because he did not object and an instruction would have cured any prejudice; and (3) the interest accrual provision should be stricken. Accordingly, we

---

[1] The record is inconsistent as to whether the defendant's last name is hyphenated. This opinion uses "Sutley Rhoads" because that is how it appears in his briefing and the trial court's judgment and sentence.

affirm Sutley Rhoads's conviction, but we remand for the trial court to strike the interest accrual provision from the judgment and sentence.

FACTS

*Initial Incident*

Shortly before 10:00 PM on June 28, 2018, Thurston County Deputy Sheriff Brett Campbell measured the speed of an oncoming vehicle driven by Sutley Rhoads at 18 miles per hour over the posted speed limit. Campbell changed his direction and drove after the vehicle.

Sutley Rhoads turned onto a side road and Campbell followed. Sutley Rhoads turned again at another intersection without stopping for a posted stop sign. At some point during the pursuit, Campbell activated his overhead lights and later activated his siren. Campbell eventually caught up to Sutley Rhoads, matching the vehicle's speed at 60 mph in a 35 mph zone. Sutley Rhoads continued at a high rate of speed with Campbell in pursuit. Sutley Rhoads finally slowed down and pulled over. Campbell remained with his vehicle and waited for backup to arrive. He then arrested Sutley Rhoads and read him his constitutional rights.

The State charged Sutley Rhoads with attempting to elude a pursuing police vehicle.

*Trial and Closing Argument*

At trial, the main issue was whether Sutley Rhoads stopped his vehicle quickly enough. Witnesses testified to the facts stated above. Campbell testified that the "beginning of the stop" occurred at 9:59 PM and that Sutley Rhoads was read his *Miranda*[2] rights at 10:08 PM. 1 Report of Proceedings (RP) at 156.

---

[2] *Miranda v. Arizona*, 384 U.S. 436, 86 S. Ct. 1602, 16 L.Ed.2d 694 (1966).

One of the elements in the to-convict instruction for attempting to elude was that "the defendant willfully failed or refused to immediately bring the vehicle to a stop after being signaled to stop." Clerk's Papers (CP) at 34. Another instruction stated, "A person acts willfully as to a particular fact when he acts knowingly as to that fact." CP at 32. Instruction 6, which addressed knowledge, included the following statement: "If a person has information that would lead a reasonable person in the same situation to believe that a fact exists, the jury is permitted but not required to find that he or she acted with knowledge of that fact." CP at 32. Sutley Rhoads did not object to instruction 6.

During closing argument, in arguing that Sutley Rhoads did not immediately stop his vehicle, the prosecutor stated:

> We know when this stop happened. It started at 9:59 and ended at 10:08. It was nine minutes. We are not talking ten seconds. We are not talking 30 seconds. We are talking nine minutes of driving through Thurston County, running stop signs, doubling the speed limit, driving in other lanes, driving off the roadway.

2 RP at 315. Sutley Rhoads did not object to this statement.

In his closing argument, Sutley Rhoads constructed a timeline of the incident using map distances and speeds at which the vehicles were traveling. Based on this analysis, Sutley Rhoads argued that "this did not take nine minutes." 2 RP at 321. Instead, he suggested that a minute or less had passed between the point he turned onto the first side road and the point where he stopped his vehicle.

During rebuttal, the prosecutor responded, "The defense is pointing to the time frame. The officer never said the pursuit lasted nine minutes. He said he flipped on his radar detector, nine minutes later, he read him his *Miranda* warnings. A lot of stuff happened in between." 2 RP at 327.

3

The prosecutor also addressed the knowledge requirement. He quoted the language from instruction 6 about the knowledge of a reasonable person. In explaining what this instruction meant, the prosecutor stated:

> [Y]ou are allowed to consider what would lead a reasonable person in a same situation to know. So we don't have to try to climb into someone else's head and say what does that person know. That would be impossible. What it does is says, hey, would a reasonable person know this?

2 RP at 308. Sutley Rhoads did not object to this statement.

*Conviction and Sentence*

The jury found Sutley Rhoads guilty of attempting to elude a pursuing police vehicle. As part of the sentence, the trial court imposed a $500 crime victim penalty assessment. The judgment and sentence provided that the LFOs would bear interest until paid in full.

Sutley Rhoads appeals his conviction and the LFO interest accrual provision.

ANALYSIS

A.      PROSECUTORIAL MISCONDUCT

Sutley Rhoads argues that the prosecutor committed misconduct during closing argument when he argued both that Campbell pursued Sutley Rhoads for nine minutes and that the jury could find Sutley Rhoads had the required knowledge by applying a reasonable person standard. We conclude that (1) the first statement did not constitute misconduct because the prosecutor corrected his initial misstatement; and (2) the second statement was improper, but Sutley Rhoads waived his challenge.

1.      Legal Principles

"Prosecutorial misconduct may deprive a defendant of his constitutional right to a fair trial." *In re Pers. Restraint of Glasmann*, 175 Wn.2d 696, 703-04, 286 P.3d 673 (2012). To establish prosecutorial misconduct during closing argument, a defendant must show that the

prosecuting attorney's statements were both improper and prejudicial. *State v. Allen*, 182 Wn.2d 364, 373, 341 P.3d 268 (2015). We must consider the prosecutor's conduct in the context of the record and all the circumstances at trial. *State v. Thorgerson*, 172 Wn.2d 438, 442, 258 P.3d 43 (2011).

During closing argument, it is improper for a prosecutor to present facts not admitted as evidence during the trial. *Glasmann*, 175 Wn.2d at 705. It also is improper for the prosecutor to misstate the evidence presented at trial. *See State v. Walker*, 182 Wn.2d 463, 478, 341 P.3d 976 (2015). However, during closing argument, the prosecutor is given wide latitude to assert reasonable inferences from the evidence. *Glasmann*, 175 Wn.2d at 704. In addition, "[a] prosecuting attorney commits misconduct by misstating the law." *Allen*, 182 Wn.2d at 373.

Here, Sutley Rhoads did not object to the challenged statements. When the defendant fails to object to the prosecutor's statements, he or she "is deemed to have waived any error, unless the prosecutor's misconduct was so flagrant and ill intentioned that an instruction could not have cured the resulting prejudice." *State v. Emery*, 174 Wn.2d 741, 760-61, 278 P.3d 653 (2012). The defendant must show that (1) no curative instruction would have eliminated the prejudicial effect, and (2) the prejudice had a substantial likelihood of affecting the verdict. *Id.* at 761. "Reviewing courts should focus less on whether the prosecutor's misconduct was flagrant or ill intentioned and more on whether the resulting prejudice could have been cured." *Id.* at 762.

2. Misstating the Evidence

Sutley Rhoads argues that the prosecutor committed misconduct by asserting that the pursuit was nine minutes long. As Sutley Rhoads notes, the evidence showed that the *entire*

*incident*, not the pursuit, lasted nine minutes. Campbell testified that the "beginning of the stop" occurred at 9:59 PM and that he read Sutley Rhoads his constitutional rights at 10:08 PM.

The prosecutor initially stated that the pursuit itself lasted nine minutes: "We are talking *nine minutes of driving*." 2 RP at 315 (emphasis added). This statement was inconsistent with the evidence because Campbell testified that the entire incident took nine minutes, including the time he waited in his vehicle for backup after Sutley Rhoads pulled over and before arresting him. Therefore, Campbell could not have been *driving* in pursuit of Sutley Rhoads for nine minutes.

However, Sutley Rhoads challenged this statement during his closing argument. And the prosecutor clarified his misstatement on rebuttal: "*The officer never said the pursuit lasted nine minutes*. He said he flipped on his radar detector, nine minutes later, he read him his *Miranda* warnings." 2 RP at 327 (emphasis added). This statement correctly characterized the evidence. Therefore, considering the closing arguments in their entirety, we conclude that the prosecutor did not commit misconduct.

We hold that Sutley Rhoads's prosecutorial misconduct claim on this basis fails.

3.    Misstating the Legal Standard for "Knowledge"

Sutley Rhoads argues that the prosecutor committed misconduct by suggesting that the jury could find that Sutley Rhoads had the required knowledge by applying a reasonable person standard.

A person attempts to elude a police vehicle if he or she drives in a reckless manner and willfully fails to immediately stop his or her vehicle after a uniformed police officer provides a visual or audible signal. RCW 46.61.024(1). In this context, willfulness is identical to

knowledge. *State v. Flora*, 160 Wn. App. 549, 553, 249 P.3d 188 (2011). The trial court instructed the jury that a person acts willfully when he acts knowingly.

RCW 9A.08.010(1)(b)(ii) states that a person acts knowingly when "he or she has information which would lead a reasonable person in the same situation to believe" that a fact exists. When knowledge is an element of a crime, "the jury must find actual knowledge but may make such a finding with circumstantial evidence." *Allen*, 182 Wn.2d at 374. As a result, it is improper for a prosecutor to argue that the State need not prove actual knowledge and must only show that a reasonable person would have known. *Id.* at 375. In instruction 6, the trial court instructed the jury regarding the knowledge requirement.

During closing argument, the prosecutor stated: "[W]e don't have to try to climb into someone else's head and say what does that person know. That would be impossible. What it does is says, hey, *would a reasonable person know this*?" 2 RP at 308 (emphasis added). We agree with Sutley Rhoads that this statement improperly suggests that the State needed to prove only what a reasonable person would have known, not what Sutley Rhoads actually knew. The prosecutor should have informed the jury that the State must prove that Sutley Rhoads had actual knowledge, but that actual knowledge can be established by considering what a reasonable person would know.[3]

Even though the prosecutor's statements were improper, Sutley Rhoads's failure to object means that he must demonstrate that no curative instruction would have eliminated any

---

[3] Sutley Rhoads also challenges another statement the prosecutor made in rebuttal: "The law is not that you have to know his intent. That's not the law. This is the law. We can't get inside of his mind." 2 RP at 328. However, the context of the statement clearly shows that the prosecutor was addressing a separate intent requirement, not the knowledge requirement. He was directly responding to Sutley Rhoads's contention that the State had to prove his intent. Therefore, we conclude that this statement did not misstate the knowledge requirement.

prejudicial effect. *Emery*, 174 Wn.2d at 761. But here, the court could have instructed the jury to disregard such statements and directed the jury's attention to the proper standard for knowledge contained in instruction 6. Therefore, we conclude that Sutley Rhoads waived his challenge because any possible prejudice could have been cured by an instruction to the jury.[4]

Sutley Rhoads argues that a reference to instruction 6 could not have cured the prosecutor's misstatements in this case because the instruction was an incorrect statement of law. However, this instruction tracks the language of WPIC 10.02. 11 WASHINGTON PRACTICE: WASHINGTON PATTERN JURY INSTRUCTIONS: CRIMINAL 10.02 (4th ed. 2016). In addition, the court in *Allen* expressly stated that an instruction with identical language as instruction 6 "correctly stated the law regarding 'knowledge.' " 182 Wn.2d at 372. Therefore, we reject Sutley Rhoads's argument.

We hold that Sutley Rhoads's prosecutorial misconduct claim on this basis fails.

B.      INTEREST ON LFOS

Sutley Rhoads argues, and the State concedes, that we should remand for the trial court to strike the interest accrual provision in his judgment and sentence. We agree.

In 2018, the legislature amended RCW 10.82.090, which now states that no interest will accrue on nonrestitution LFOs after June 7, 2018. RCW 10.82.090(1). Therefore, we accept the State's concession and hold that the interest accrual provision should be stricken.

---

[4] In *State v. Jones*, Division Three of this court summarily held that referring the jury to the knowledge instruction previously given to the jury could not have cured the prejudice resulting from a similar closing argument. No. 36795-9-III, slip op. (Wash. Ct. App. May 19, 2020), http://www.courts.wa.gov/opinions/pdf/367959_pub.pdf. We disagree.

## CONCLUSION

We affirm Sutley Rhoads's conviction, but we remand for the trial court to strike the interest accrual provision from the judgment and sentence.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

_____
MAXA, J.


We concur:

_____
LEE, C.J.


_____
CRUSER, J.