# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| STATE OF WASHINGTON, | No. 57582-5-II |
| Respondent, | |
| v. | UNPUBLISHED OPINION |
| JESSE RAYMOND CRAIN, | |
| Appellant. | |

MAXA, J. – Jesse Crain appeals his conviction of third degree malicious mischief.[1]  He argues that the prosecutor committed misconduct by misstating the applicable law regarding proof of malice and that defense counsel provided ineffective assistance of counsel by failing to object.  Crain also challenges the imposition of two legal financial obligations (LFOs).

We hold that (1) although the prosecutor's argument was improper, Crain waived his prosecutorial misconduct claim by failing to object to the argument in the trial court; (2) Crain's ineffective assistance of counsel claim fails because he cannot show prejudice; and (3) as the State concedes, the crime victim penalty assessment (VPA) and the DNA collection fee must be stricken.

Accordingly, we affirm Crain's conviction, but we remand for the trial court to strike the VPA and the DNA collection fee from Crain's judgment and sentence.

---

[1] Crain also was convicted of second degree assault, but he does not appeal that conviction.

FACTS

Crain lived in the Blue Mountain RV Park in Port Angeles, operated by Lane and Jeanne Wolfley. In July 2022, Lane Wolfley served Crain with a notice to vacate and initiated formal eviction proceedings. Crain failed to appear in court to respond.

A few days later, Wolfley found Crain using a wooden pole to dismantle a wooden fence bordering the RV park. Wolfley told Crain to stop destroying the fence, and Crain responded "I am making a statement," about "you know what." Rep. of Proc. (RP) at 425-26. Wolfley called 911, and Crain walked into the woods. Crain came back with a bow and arrow in one hand and a club in the other, and he again began destroying the fence.

A small crowd of tenants gathered, and Wolfley again told Crain to stop. Crain dropped the stick, walked up to Wolfley and said, "What are you going to do about it." RP at 432. Wolfley said the sheriff is on the way and Crain responded, "sheriff doesn't do a effing thing anyway." RP at 432-33. Then Crain took his bow and strung an arrow in it and began raising it toward Wolfley. At that point, Wolfley charged Crain and grabbed the bow and arrow, and the two struggled. Eventually, two other tenants assisted Wolfley in holding Crain down on the ground until law enforcement arrived.

The State charged Crain with second degree assault and third degree malicious mischief.

*Trial Court Proceedings*

At trial, Wolfley and eyewitnesses testified to the facts stated above. Crain testified and admitted that he damaged the fence, but he claimed that he did so because he was hungry and needed firewood.

The trial court gave the jury several instructions on third degree malicious mischief. One instruction stated, "A person commits the crime of malicious mischief in the third degree when

he knowingly and maliciously causes physical damage to the property of another." Clerk's Papers (CP) at 51. Instruction 12 stated,

> Malice and maliciously mean an evil intent, wish, or design to vex, annoy, or injure another person.
>
> Malice may be, but is not required to be, inferred from an act done in willful disregard of the rights of another.

CP at 52. The to-convict instruction for third degree malicious mischief stated that the State was required to prove beyond a reasonable doubt that Crain "knowingly and maliciously caused physical damage to the property of another." CP at 56.

In closing argument, the prosecutor said, "[Crain] damaged [the fence] because he could. Because he doesn't care about the property rights of another and . . . it's all about him." RP at 662. Referring to the permissive inference instruction, the prosecutor told the jury:

> [I]t says - - it can be inferred from an act done with unlawful disregard. So even if you don't buy - - *if you're not convinced beyond a reasonable doubt that his purpose was to vex or have an ill wish or to annoy Mr. Wolfley*, he didn't care at all. He disregarded that Mr. Wolfley's fence was Mr. Wolfley's property. He didn't care about that.

RP 662 (emphasis added).

The jury found Crain guilty of second degree assault and third degree malicious mischief. At sentencing, the trial court imposed the $500 VPA and a $100 DNA collection fee as LFOs. Crain appeals his judgment and sentence.

## ANALYSIS

### A. PROSECUTORIAL MISCONDUCT

Crain argues that the prosecutor engaged in misconduct by misstating the legal standard for reasonable doubt regarding malicious intent. We conclude that the prosecutor's argument was improper, but Crain waived his claim by failing to object at trial.

1. Legal Principles

To prevail on a claim of prosecutorial misconduct, a defendant must show that the prosecutor's conduct was both improper and prejudicial in the context of all the circumstances of the trial. *State v. Zamora*, 199 Wn.2d 698, 708, 512 P.3d 512 (2022). Our analysis considers "the context of the case, the arguments as a whole, the evidence presented, and the jury instructions." *State v. Slater*, 197 Wn.2d 660, 681, 486 P.3d 873 (2021). To show prejudice, the defendant is required to show a substantial likelihood that the misconduct affected the jury verdict. *Id*.

Arguments that misstate the law constitute prosecutorial misconduct. *State v. Allen*, 182 Wn.2d 364, 373, 341 P.3d 268 (2015). However, the prosecutor is given wide latitude to assert reasonable inferences from the evidence. *Slater*, 197 Wn.2d at 680.

When the defendant fails to object at trial, a heightened standard of review requires the defendant to show that the conduct was " 'so flagrant and ill intentioned that [a jury] instruction would not have cured the [resulting] prejudice.' " *Zamora*, 199 Wn.2d at 709 (quoting *State v. Loughbom*, 196 Wn.2d 64, 70, 470 P.3d 499 (2020)). "In other words, the defendant who did not object must show the improper conduct resulted in *incurable* prejudice." *Zamora*, 199 Wn.2d at 709. If a defendant fails to make this showing, the prosecutorial misconduct claim is waived. *Slater*, 197 Wn.2d at 681.

2. Analysis

Crain argues that the prosecutor improperly told the jury that they could convict Crain even if they were not convinced beyond a reasonable doubt that his conduct fell within the definition of malice. We agree.

The trial court instructed the jury that to convict, the State had to prove beyond a reasonable doubt that Crain maliciously damaged property. Instruction 12 defined "maliciously" as "evil intent, wish, or design to vex, annoy, or injure another person." CP at 52. Instruction 12 also stated that "[m]alice may be, but is not required to be, inferred from an act done in willful disregard of the rights of another." CP at 52.

However, the prosecutor's argument suggested that the jury did not have to find that Crain acted maliciously – as defined in instruction 12 – in order to convict as long as the jury inferred that Crain's actions were done in willful disregard of the right of another. The prosecutor seemed to saying that the State did not have to prove "evil intent, wish, or design to vex, annoy, or injure another person" beyond a reasonable doubt as long as the jury inferred that the act was "done in willful disregard of the right of another."

This argument reflects a subtle misstatement of the law. The permissible inference in instruction 12 was not a method or proving malice that was independent of the definition of malice in the previous paragraph. The inference allowed the jury to infer that Crain acted with "evil intent, wish, or design to vex, annoy, or injure another person." But the jury still had to find beyond a reasonable doubt that Crain *in fact* acted with "evil intent, wish, or design to vex, annoy, or injure another person." Therefore, it was improper for the prosecutor to suggest that the jury could convict Crain even if they were "not convinced beyond a reasonable doubt that his purpose was to vex or have an ill wish or to annoy Mr. Wolfley." RP at 662.

Nevertheless, Crain did not object to the prosecutor's argument. We conclude that any prejudice could have been cured with an instruction. If Crain had objected, the trial court could have instructed the jury to disregard the prosecutor's statement and clarified that the instructions required the State to prove malice beyond a reasonable doubt. And the argument was brief and

somewhat vague, and therefore did not have the type of inflammatory effect that an instruction could not cure. *See State v. Emery*, 174 Wn.2d 741, 762-63, 278 P.3d 653 (2012) (noting that it is less likely that improper statements will cause incurable prejudice when they do not have an inflammatory effect).

Accordingly, we hold that Crain waived his prosecutorial misconduct claim by failing to object in the trial court.

B.      INEFFECTIVE ASSISTANCE OF COUNSEL

Crain argues that defense counsel provided ineffective assistance by failing to object after the prosecutor misstated the law. We disagree.

To prevail on an ineffective assistance claim, the defendant must show both that (1) defense counsel's representation was deficient and (2) the deficient representation prejudiced the defendant. *State v. Vazquez*, 198 Wn.2d 239, 247-48, 494 P.3d 424 (2021). Representation is deficient if, after considering all the circumstances, it falls below an objective standard of reasonableness. *Id*. Prejudice exists if there is a reasonable probability that, except for counsel's errors, the result of the proceeding would have been different. *Id*. at 248.

Here, Crain cannot demonstrate there is a reasonable probability that, but for defense counsel's failure to object, the outcome would have been different. The to-convict instruction clearly informed the jury that the State was required to prove beyond a reasonable doubt that Crain acted maliciously. The prosecutor's statement was brief and somewhat vague and confusing, and would not necessarily compel a jury to convict even if they did not find actual malice. And Crain does not explain how he was prejudiced.

In addition, there was overwhelming evidence that Crain did in fact act with malice. The testimony of Wolfley and independent eyewitnesses made it clear that Crain was destroying the

fence to "vex, annoy, or injure" Wolfley. There is no indication that the outcome of the trial would have been different if defense counsel had objected.

Accordingly, we hold Crain's ineffective assistance of counsel claim fails.

C.    IMPOSITION OF LFOS

Crain argues, and the State concedes, that the $500 VPA and the $100 DNA collection fee should be stricken under recent statutory amendments. We agree.

Effective July 1, 2023, RCW 7.68.035(4) prohibits courts from imposing the VPA on indigent defendants as defined in RCW 10.01.160(3). *See State v. Ellis*, 27 Wn. App. 2d 1, 16, 530 P.3d 1048 (2023). Effective July 1, 2023, LAWS OF 2023, ch. 449, § 4, eliminated the $100 DNA collection fee for all defendants. Although these amendments took effect after Crain's sentencing, it applies to cases pending on appeal. *Ellis*, 27 Wn. App. 2d at 16.

RCW 10.01.160(3) states that a defendant is indigent if they meet the criteria in RCW 10.101.010(3)(a) through (c). The trial court found that Crain was indigent as defined in RCW 10.101.010(3)(a)-(c). Therefore, the $500 VPA must be stricken from Crain's judgment and sentence. And the DNA collection fee also must be stricken.

CONCLUSION

We affirm Crain's conviction, but we remand for the trial court to strike the VPA and the DNA collection fee from Crain's judgment and sentence.

No. 57582-5-II

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record pursuant to RCW 2.06.040, it is so ordered.

_____
MAXA, J.


I concur:

_____
GLASGOW, J.

LEE, J. (concurring) — I agree with the majority that Crain waived his prosecutorial misconduct claim by failing to object in the trial court. However, I am compelled to write separately as I disagree with the majority that malice in a malicious mischief charge can only be proven by showing an "evil intent, wish, or design to vex, annoy, or injure another person" and not by proving the permissible inference and that the prosecutor misstated the law.

The majority interprets the prosecutor's argument as "a subtle misstatement of the law" because, according to the majority, the prosecutor seemed to argue that "the State did not have to prove 'evil intent, wish, or design to vex, annoy, or injure another person' beyond a reasonable doubt as long as the jury inferred that the act was 'done in willful disregard of the right of another.'" Majority at 5. It seems the majority takes the position that the only way to prove "malice" is to prove beyond a reasonable doubt that Crain acted with "evil intent, wish, or design to vex, annoy, or injure another person" and that the permissible inference is not a method of proving malice.

I disagree with the majority's conclusion that the prosecutor's argument was "a subtle misstatement of the law" because proving the permissible inference is not sufficient for a jury to find malice. The prosecutor's argument conveyed to the jury what instruction 12 required—that the definition of "malice" is "an evil intent, wish, or design to vex, annoy, or injure another person" and that malice can be "inferred from an act done in willful disregard of the rights of another." Clerk's Papers (CP) at 52. In other words, if the evidence shows beyond a reasonable doubt that Crain acted in willful disregard of the rights of another, the jury can infer that Crain acted with malice.

Instruction 12 states:

> Malice and maliciously mean an evil intent, wish, or design to vex, annoy, or injure another person.

9

Malice may be, but is not required to be, inferred from an act done in willful disregard of the rights of another.

CP at 52.

"'Jury instructions are constitutionally adequate when, taken as a whole, they properly inform the jury of the applicable law, are not misleading, and permit the defendant to argue [their] theory of the case.'" *State v. Butler*, 200 Wn.2d 695, 719, 521 P.3d 931, 943 (2022) (alteraltions in original) (internal quotation marks omitted) (quoting *State v. Knapp*, 197 Wn.2d 579, 586, 486 P.3d 113 (2021)). Here, there is no argument that the instruction itself is misleading, nor does the majority hold that the instruction is misleading.

When the instruction is read as a whole, the permissible inference provides another way the jury could find that Crain acted with malice. Thus, the jury could find malice beyond a reasonable doubt either through evidence of "an evil intent, wish, or design to vex, annoy, or injure another person" or by inference based on "an act done in willful disregard of the rights of another." To interpret instruction 12 otherwise ignores the permissible inference language that clearly states that malice "may be . . . inferred from an act done in willful disregard of the rights of another." CP at 52.

In addressing malicious mischief during closing arguments, the prosecutor argued:

Now, malicious mischief in the third degree. Knowingly and maliciously damaged the property of another. That's the fence.

. . . .

The definition is right there, knowingly and maliciously causing physical damage to the property of another.

Well, what is malice? And evil intent, wish or design to vex or injure another person. That fits Mr. Crain to a T. He doesn't care. He doesn't care about property rights. He doesn't care because, again ladies and gentlemen, it's all about him. You can also it says—it can be inferred from an act done with unlawful disregard. So even if you don't buy—if you're not convinced beyond a reasonable

doubt that his purpose was to vex or have an ill wish or to annoy Mr. Wolfley, he didn't care at all. He disregarded that Mr. Wolfley's fence was Mr. Wolfley's property. He didn't care about that.

Verbatim Rep. of Proc. at 661-62.

I read the prosecutor's argument as saying if you are not convinced beyond a reasonable doubt that Crain intended to "vex or have an ill wish or to annoy" Wolfley, malice can be inferred from Crain's "act done with unlawful disregard." Crain did not care at all; he "disregarded Mr. Wolfley's property." I do not read this as a "subtle" misstatement of the law.

But, as stated above, I agree with the majority that Crain waived his prosecutorial misconduct claim by failing to object in the trial court.

_Lee, J._

11