IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | |
| | ) | No. 37487-4-III Cons. w/ |
| Respondent, | ) | No. 37643-5-III |
| | ) | |
| v. | ) | |
| | ) | |
| TROYTON OLIVER TARDIFF, | ) | |
| | ) | UNPUBLISHED OPINION |
| Appellant | ) | |
| _____ | ) | |
| In re the Matter of Personal Restraint of: | ) | |
| | ) | |
| TROYTON OLIVER TARDIFF. | ) | |
| | ) | |
| | ) | |

FEARING, J. — Troyton Tardiff appeals, on numerous grounds, his jury

convictions on two counts of possession of a stolen motor vehicle and one count of

trafficking in stolen property in the first degree. We accept one of the grounds:

prosecutorial misconduct. We reverse and remand for a new trial.

FACTS

This appeal arises from the alleged possession of various makes of stolen vehicles

by Troyton Tardiff, then on community custody. Two community custody officers

conducted a routine inspection at Tardiff's house.  After finding Tardiff absent, the officers walked to the back of his residence, where they saw a snowmobile and a green tarp covering a large object.  Officer Renee Cooper could not discern the object under the tarp, and she deemed the state of affairs suspicious.  According to Cooper,

> Most people don't cover things up with tarps unless they're hoping nobody will figure out what's underneath it.

Report of Proceedings (RP) at 171.

The duo of community custody officers surveyed the identification number on the snowmobile and then peered underneath the green tarp, where they saw a Polaris Ranger utility terrain vehicle.  In a written report, the officers noted suspicion about the presence of the Ranger on Troyton Tardiff's property because they had not seen the vehicle during previous visits, a Polaris Ranger is expensive, and Tardiff received only $700 a month in income.  The officers' report omitted mention of the removal of the green tarp.  The officers discovered an off road vehicle permit on the Ranger.  The officers later learned, through the permit number, that someone reported the Polaris Ranger as stolen.

Months later, law enforcement officers, on suspicion of the presence of stolen vehicles at a wrecking yard, searched the yard.  There the officers located a Ford F-450 pickup truck reported as stolen.  A suspect at the wrecking yard informed the officers that he acquired the pickup from Troyton Tardiff.

2

On another visit to Troyton Tardiff's home, a community custody officer saw a boat and trailer. An investigation revealed that both boat and trailer were stolen.

PROCEDURE

The State of Washington charged Troyton Tardiff with three counts of possession of a stolen motor vehicle: the Polaris Ranger, the Ford F-450, and the boat. The State also charged Tardiff with trafficking in stolen property with regard to the Ford F-450.

Troyton Tardiff's trial counsel did not file any motions to suppress evidence under CrR 3.6. Twice during her trial testimony, Renee Cooper referred to "offenders." Detective Steve White, who participated in the stolen vehicle investigations, occasionally referred, during his trial testimony, to the original owner of the Polaris Ranger as a "victim."

Troyton Tardiff's defense sought to raise doubt that he knew the property in his possession to be stolen. For example, Tardiff testified that he bought the Polaris Ranger at a low price for investment purposes, while not knowing the vehicle to be stolen. Defense counsel highlighted that a man captured on video as a suspect for stealing the Ranger was not Tardiff.

The trial court instructed the jury on the mens rea element of knowledge, which applied to each of Troyton Tardiff's criminal charges:

> A person knows or acts knowingly or with knowledge with respect to a fact, circumstance or result when he is aware of that fact, circumstance or result. It is not necessary that the person know that the fact,

3

circumstance or result is defined by law as being unlawful or an element of a crime.

If a person has information that would lead a reasonable person in the same situation to believe that a fact exists, the jury is permitted but not required to find that he or she acted with knowledge of that fact.

When acting knowingly as to a particular fact is required to establish an element of a crime, the element is also established if a person acts intentionally as to that fact.

Clerk's Papers (CP) at 73. The court adopted the instruction verbatim from 11

WASHINGTON PRACTICE: WASHINGTON PATTERN JURY INSTRUCTIONS: CRIMINAL 10.02,

at 222 (4th ed. 2016).

During closing argument, the prosecuting attorney occasionally argued that

Troyton Tardiff "should have known" that he possessed stolen property. The first

reference came shortly after the prosecutor began his closing argument:

The message for this case is: if it sounds too good to be true, it probably is. And that is the story of this case, whether you were talking about the Polaris Ranger, whether you are talking about the Ford F-450 or you were talking about the boat and the trailer. Too good to be true and *Mr. Tardiff should have known that, if he didn't actually know that*.

RP at 409 (emphasis added). The next two uses of "should have known" concerned the

low price that Tardiff claimed he paid for the Polaris Ranger UTV:

And so, you've got a perfectly functional Polaris Ranger and he bought it for $300. Is that reasonable? Is that too good to be true? You bet it is. *And he should have known that*.

RP at 411 (emphasis added).

So, that resulted in Mr. Tardiff completely changing the story and then we have this unknown man in the woods who agrees to sell a Polaris

4

Ranger for ten percent of market value as long as there's no paper involved. Which then raises that whole question there. No paper involved in any of these transactions. *What a reasonable person would do, don't think so*.

RP at 415 (emphasis added).

The State's attorney next expounded on a reasonable person standard while discussing the reasonable doubt standard:

I would ask that you take a look at that third paragraph where it talks about what a reasonable doubt is, because that's the standard in this case. All right, *every once in a while, in these kinds of cases particularly where the element in question is knowledge and they look at the Prosecutor and say well Mr. Prosecutor you didn't prove what was going on in Mr. Tardiff's head or what he actually knew. And if that was the standard, I will argue to you that that's not reasonable doubt, that's no doubt. That's almost impossible to prove*.

RP at 419 (emphasis added). Next the prosecutor asked the jury specifically to review the jury instruction relating to the definition of knowledge:

Now, the next . . . issue that I want to talk about because these are— this is a difficult question in these cases, is in Instruction Number 11, I mean that's what knowledge is. Because all of this stuff has to be found, he has to be knowing. Right? *He has to know that it's stolen, has to know that he's doing this and that*. Take a look at that middle paragraph of that Instruction. Okay. I think that it's important enough that I'll go ahead and read that part: if a person has information that would lead a reasonable person in the same situation to believe that a fact exists, the jury is permitted, but not required to find that he or she acted with knowledge of the fact.
And what that means is you can consider, you can *put the reasonable person*, in each one of these situations that Mr. Tardiff was in. And the real easy one for me is that first one, where would the *reasonable person* believe that this was a legitimate purchase of the Polaris Ranger for $300 with no paperwork or would the reasonable person believe that the alarms are going off, that sign is flashing too good to be true, that's what

5

the reasonable person would have done. *And so, when you conduct that analysis, you can find that Mr. Tardiff acted knowingly when he made that purchase and took the Polaris Ranger home.*

RP at 420-21 (emphasis added).

The prosecuting attorney discussed Troyton Tardiff's acceptance of the boat:

[W]here he loses me is that it was just given to him by John Epps, Jr. Somebody who didn't give away things. That he could have profited from this, and yet he didn't and instead he just gave it to Mr. Tardiff. So, *again it's the reasonable person*. You get this boat delivered to you, you don't want a boat, you don't need a boat, but you take it without the paperwork.

RP at 421-22 (emphasis added). The prosecutor then intoned that Tardiff acted

unreasonably, recklessly, and negligently:

Remember the first time that he gets in trouble with law enforcement or he's contacted by law enforcement back in March of 2018. Okay? Now, the first time maybe bad luck, maybe just a bad choice in judgement. The second time is in May when we have the F-450 involvement there and actually the F-450 was involved with Mr. Tardiff's house at about the same time as the first, as the Polaris, and so now we get the second time. Okay, and *now we're getting into that realm where your conduct now with not only unreasonable, it's reckless, it's almost negligent what you're doing*. It's—you're—you're having these transactions with no paperwork, no cover at all, even though you've already been called on it by law enforcement.

RP at 422 (emphasis added). The State's attorney concluded his opening summation:

By now there should be alarms going off in your head because one, two, three, now you have a pattern and a pattern is intentional, it's not accidental. And when you're doing these things time and time again, it's intentional, you know what you're doing. And *if you factor in all the facts and circumstances of this case, apply that reasonable person standard to the facts in this case, then you have sufficient—you have sufficient*

> *information to find that Mr. Tardiff is guilty on all four Counts beyond a reasonable doubt.*

RP at 422-23 (emphasis added).

Troyton Tardiff's trial counsel never objected to the prosecutor's remarks about "what [Tardiff] should have known" or references to a reasonable person standard. In his closing statement, however, defense counsel addressed the prosecutor's statements:

> Now, the State spent a bunch of time talking about oh what a reasonable person should have known. And it's important that you read your Instructions because like what I talked about in voir dire, the Judge gives you the law, the Instructions of the law. And I defy you and I defy Mr. Tyndal to show me where it says in Instruction 1 or in Instruction—in the to-convict Instruction for the Polaris Instruction Number 7, that the Defendant acted with knowledge or should have known. It doesn't say or should have known. It's convenient. In Instruction Number 8 or should have known. Instruction Number 9 or should have known. Instruction Number 10 or should have known. It's not there. . . . They say oh he knew, he knew, he knew it was stolen. What did he do to show that they were stolen?

RP at 428.

During rebuttal summation, the prosecutor first addressed defense counsel's argument and clarified the mens rea standard required for conviction:

> [S]ome of the words that I said earlier kind of got twisted around and misconstrued. I never said that the standard was reckless or negligent. What I was applying to when I said that was, that maybe the first time you give him the benefit of the doubt, because it's just bad luck. Now, maybe the next time he's a little bit reckless when he does it, but the third time we can assume that we have a pattern and that it's intentional. His actions are intentional and that his actions are knowing and that's the standard.

7

RP at 433. But later in rebuttal, the prosecutor again invoked the reasonable person

standard:

> [Y]ou can go back and look at what it takes for knowing and you apply that reasonable person standard.
> So, it's not whether or not he actually knew. When I say he should have known, that's when we're applying that reasonable person standard. Would a reasonable person know under those facts and circumstances? And the answer to that is absolutely yes. And as a result, Mr. Tardiff is guilty on all three or all four of these charges.
> . . . .
> . . . The information that we had, which we got from Mr. Tardiff was that the Ford showed up, somebody came to look at a generator, it broke down and it got left there for a period of time. I don't know how long it was. But it was on his property. And he tells law enforcement that he couldn't get anyone to take it. Now *what did a reasonable person do there?* He didn't call law enforcement to check on who owned this rig. He didn't call anybody for help in moving it, instead he took it on his own, made a trade of a vehicle that he didn't own. *So again, reasonable person, he knew*.

RP at 435-36 (emphasis added).

The jury found Troyton Tardiff guilty of possession of stolen property for the

Polaris Ranger and the Ford F-450 and guilty of trafficking the stolen Ford F-450. The

jury acquitted Tardiff of the crime of possession of stolen property for the boat.

At sentencing, the State mentioned four earlier Montana convictions to be

included in the calculation of Troyton Tardiff's offender score. Nevertheless, the record

does not show any documentation submitted by the State to substantiate the foreign

convictions. In the final judgment and sentence, the superior court catalogued the four

Montana convictions in the criminal history section.

During sentencing, Troyton Tardiff's attorney asked that Tardiff receive a Drug Offender Sentencing Alternative (DOSA). The superior court rejected a DOSA sentence. The court remarked: "Had you really been serious about a drug problem and wanting to address it, you could have done that in the front end." RP at 464.

LAW AND ANALYSIS

Troyton Tardiff filed both an appeal and a personal restraint petition. In his appeal, Tardiff seeks reversal of his three convictions on the grounds that his trial counsel ineffectively represented him when failing to move for suppression of physical evidence, when failing to bring a motion in limine to preclude community custody officers from testifying about Tardiff's criminal history and need for supervision, and when failing to file a motion in limine to preclude witnesses from using the term "victim." Tardiff also seeks reversal of his convictions on the basis of prosecutorial misconduct. He contends that the State's attorney committed flagrant and incurable misconduct by presenting improper closing argument that misstated the law and lowered the burden of proof on the element of knowledge, a required element on all charges.

Assuming this court affirms his convictions, Troyton Tardiff, in his appeal, asks the court to remand for resentencing because the State failed to prove the comparability of his Montana convictions. In his personal restraint petition, Tardiff seeks another sentencing because the sentencing court denied a DOSA sentence on improper grounds.

9

We grant Troyton Tardiff relief on the basis of prosecutorial misconduct. We do not address Tardiff's other assignments of error. Tardiff may forward his other arguments during the new trial.

Troyton Tardiff argues that the prosecutor committed misconduct by misstating the State's burden to prove actual knowledge. According to Tardiff, when the prosecuting attorney told the jury it could convict him based on what he "should have known" or what a reasonable person "would have known," the State's attorney misled the jury into believing it could convict him based on constructive, not actual, knowledge. The State responds that, when viewing the entire closing argument as a whole, the prosecutor's comments were consistent with the court's instructions and the law. The State also argues that, assuming the prosecuting attorney promoted an erroneous view of the law, Tardiff shows no prejudice. We agree with Tardiff.

To establish prosecutorial misconduct, the defendant bears the burden of showing the prosecuting attorney's comments were improper and prejudicial. *State v. Warren*, 165 Wn.2d 17, 26, 195 P.3d 940 (2008). Troyton Tardiff never objected to the State's summation remarks. When a defendant fails to object at trial to the State attorney's remarks, the defendant waives the assignment of error unless the attorney's conduct was so flagrant and ill-intentioned that an instruction could not have cured the resulting prejudice. *State v. Lindsay*, 180 Wn.2d 423, 430, 326 P.3d 125 (2014). Under this heightened standard, the defendant must show (1) a curative

10

instruction would not have obviated any prejudicial effect on the jury, and (2) a substantial likelihood exists that the misconduct affected the jury's verdict. *State v. Emery*, 174 Wn.2d 741, 761, 278 P.3d 653 (2012).

To resolve a claim of prosecutorial misconduct, this court must first inquire whether the prosecutor made improper comments. A prosecuting attorney commits misconduct by misstating the law. *State v. Allen*, 182 Wn.2d 364, 373, 341 P.3d 268 (2015). The prosecuting attorney misstating the law of the case to the jury constitutes a serious irregularity bearing a grave potential to mislead the jury. *State v. Davenport*, 100 Wn.2d 757, 763, 675 P.2d 1213 (1984).

To better comprehend Troyton Tardiff's prosecuting attorney's inappropriate remarks during summation, we address the law of possession of a stolen vehicle and trafficking in stolen property. A person commits the crime of possession of a stolen vehicle if he or she "knowingly" possesses a motor vehicle while "knowing" the car is stolen. RCW 9A.56.068. A person commits the crime of trafficking in stolen property if he or she "knowingly" receives, retains, possesses, conceals, or disposes of stolen property "knowing" that it has been stolen. RCW 9A.56.140(1). In turn, we find the definition of "knows," "knowing," and "knowingly" in RCW 9A.08.010(1), which declares:

> (b) KNOWLEDGE. A person *knows* or acts *knowingly* or *with knowledge* when:

11

> (i) he or she is aware of a fact, facts, or circumstances or result described by a statute defining an offense; or
> (ii) he or she has information which would lead a reasonable person in the same situation to believe that facts exist which facts are described by a statute defining an offense.

(Emphasis added.) Subsection (ii)'s statutory definition of "knowledge" suggests the trier of fact may convict one of a crime requiring knowledge, based on constructive knowledge alone.

Despite the objective definition of "knowing" under RCW 9A.08.010(1)(b)(ii), Washington case law demands a subjective standard of knowledge when the State must prove the mens rea of "knowledge" in order to convict the accused of a crime. *State v. Allen*, 182 Wn.2d 364, 374 (2015); *State v. Shipp*, 93 Wn.2d 510, 515-16, 610 P.2d 1322 (1980). Nevertheless, Washington courts allow the jury to be instructed, as was Troyton Tardiff's jury instructed, of a permissible presumption of actual knowledge by a finding of constructive knowledge. *State v. Leech*, 114 Wn.2d 700, 710, 790 P.2d 160 (1990), *abrogated on other grounds by In re Personal Restraint of Andress*, 147 Wn.2d 602, 56 P.3d 981 (2002); *State v. Shipp*, 93 Wn.2d at 515-16. Still, despite this presumption, the jury must find subjective knowledge. *State v. Shipp*, 93 Wn.2d at 517.

During closing argument, Troyton Tardiff's prosecutor mentioned at least five times that Tardiff "should have known" the vehicles to be stolen. On eight occasions, the State's attorney referenced the reasonable person standard and invited the jury to convict based on whether a reasonable person would suspect the vehicles to be stolen. All of

12

these comments repeatedly told the jury they need not find that Tardiff actually knew the vehicles to be stolen.

The State argues that, during his rebuttal, the prosecuting attorney corrected any mistakes made during the opening summation. In fact, at the beginning of his rebuttal summation, the prosecutor denied ever suggesting that the jury could convict based on a reckless or negligent standard, as opposed to finding actual knowledge. But shortly thereafter, the prosecuting attorney returned to the theme of convicting based on what a reasonable person should know. Counsel uttered the mantra "reasonable person" five times in the rebuttal. To repeat, when concluding, the State's attorney intoned:

> *[Y]ou can go back and look at what it takes for knowing and you apply that reasonable person standard.*
> *So, it's not whether or not he actually knew. When I say he should have known, that's when we're applying that reasonable person standard. Would a reasonable person know under those facts and circumstances? And the answer to that is absolutely yes. . . .*
>
> *. . . .*
>
> . . . The information that we had, which we got from Mr. Tardiff was that the Ford showed up, somebody came to look at a generator, it broke down and it got left there for a period of time. I don't know how long it was. But it was on his property. And he tells law enforcement that he couldn't get anyone to take it. Now *what did a reasonable person do there?* He didn't call law enforcement to check on who owned this rig. He didn't call anybody for help in moving it, instead he took it on his own, made a trade of a vehicle that he didn't own. *So again, reasonable person, he knew*.

RP at 435-36 (emphasis added). So the jury retired to deliberate with the refrain "reasonable person" ringing in its collective ear.

13

*State v. Allen*, 182 Wn.2d 364 (2015) informs our decision both as to whether Troyton Tardiff's prosecutor uttered improper remarks and whether those comments formed reversible prejudice. In *State v. Allen*, a prosecution for being an accomplice to aggravated first degree murder, the State needed to prove beyond a reasonable doubt that Darcus Allen knew the murder victims to be police officers. The prosecuting attorney, during summation, repeatedly used the phrase "should have known" when describing the definition of "knowledge." The Washington Supreme Court concluded that the "should have known" standard is incorrect because the jury must find that the defendant actually knew. Troyton Tardiff's prosecutor uttered similar statements to those condemned by the high court in *State v. Allen*.

The State distinguishes *State v. Allen* on the basis that Darcus Allen's defense counsel objected to the prosecuting attorney's reference to a "should have known" standard, the prosecutor placed the words "should have known" on a slide, and because the jury sent a question to the trial judge: "'If someone "should have known" does that make them an accomplice?'" *State v. Allen*, 182 Wn.2d 364 at 372.

We address the failure of Troyton Tardiff's counsel to object later. For now we observe that Tardiff's jury may not have sent a message or question to the court because all of the jury members believed constructive knowledge to be the standard so no questions arose during deliberations.

14

The State contends that Troyton Tardiff's prosecutor spoke inartfully at best and confusingly at worst. The State presents no legal authority, however, that a clumsy or perplexing closing argument evades error. An accused deserves a jury not burdened with misunderstanding.

Because Troyton Tardiff's counsel failed to object to the prosecutor's comments permitting a conviction based on constructive knowledge, this appeal tasks the court with determining whether the prosecuting attorney's misconduct was flagrant and ill-intentioned and whether Tardiff suffered prejudice. We question our ability to enter the thoughts of the prosecuting attorney in order to discern his intentions. Despite the "ill-intentioned" standard, our Supreme Court has directed us not to delve into the mind of the prosecutor. The Supreme Court has written twice that we should not focus on the prosecutor's subjective intent in committing misconduct, but instead on whether the defendant received a fair trial in light of the prejudice caused by the violation of existing prosecutorial standards and whether that prejudice could have been cured with a timely objection. *State v. Walker*, 182 Wn.2d 463, 478, 341 P.3d 976 (2015); *State v. Emery*, 174 Wn.2d 741, 762 (2012).

At least two Washington courts have noted one factor to consider when determining if improper prosecutorial arguments were flagrant and ill-intentioned. An argument should be so characterized when a Washington court previously recognized the same argument as improper in a published opinion. *State v. Johnson*, 158 Wn. App. 677,

15

685, 243 P.3d 936 (2010); *State v. Fleming*, 83 Wn. App. 209, 213-14, 921 P.2d 1076 (1996). In *State v. Fleming*, the prosecuting attorney told the jury that, to acquit the defendants of rape, the jury must find that the victim lied or was confused. This court held the misconduct to be flagrant because the prosecutor uttered the argument two years after an opinion proscribing the argument.

Because of the rule in *State v. Johnson* and *State v. Fleming*, we conclude that Troyton Tardiff's prosecutor engaged in flagrant and ill-intentioned conduct. At least one Supreme Court decision issued before Tardiff's trial, *State v. Allen*, 182 Wn.2d 364 (2015), held that a prosecuting attorney should not ask a jury to convict on a crime requiring knowledge based on what the accused should have known. Tardiff's prosecuting attorney should have carefully followed the strictures of *Allen* and expressly told the jury not to convict on constructive knowledge.

When reviewing prosecutorial misconduct not objected to at trial, the Supreme Court also directs us to address: (1) whether a curative instruction would have obviated any prejudicial effect on the jury, and, conversely, (2) whether there is a substantial likelihood that the misconduct affected the jury's verdict. *State v. Emery*, 174 Wn.2d 741, 761 (2012). We do not know if this is a test apart from whether the prosecuting attorney engaged in flagrant and ill-intentioned misconduct.

Troyton Tardiff's trial court could not have cured the prejudice resulting from the State's attorney's closing argument with another instruction. The court already

instructed the jury in accordance with precedent and standard instructions that the jury must find actual knowledge, but that the jury may infer actual knowledge by constructive knowledge. The court would only repeat the previously delivered instruction.

We also conclude that the prosecutor's erroneous comments prejudiced Troyton Tardiff. The parties strenuously disputed whether Tardiff knew the three vehicles to be stolen. Tardiff testified to the lack of knowledge and the circumstances under which he gained possession of the vehicles. He testified that he bought the Polaris Ranger at a low price for investment purposes, while not knowing the vehicle to be stolen. A man captured on video as a suspect for stealing the Ranger was not Tardiff. The State produced no direct evidence and only circumstantial evidence that Tardiff had actual knowledge he possessed stolen vehicles.

In closing argument, the prosecutor lowered the State's burden to prove Troyton Tardiff's knowledge by repeatedly asserting that the jury could find Tardiff guilty if the jury found he "should have known" the vehicles were stolen. Repetitive misconduct can have a prejudicial "cumulative effect." *In re Personal Restraint Petition of Glasmann*, 175 Wn.2d 696, 707, 286 P.3d 673 (2012) (plurality opinion).

This court issued its decision in *State v. Jones*, 13 Wn. App. 2d 386, 463 P.3d 738 (2020), after trial in Troyton Tardiff's prosecution. Nevertheless, our ruling in Tardiff's appeal conforms to our ruling in *State v. Jones*.

17

CONCLUSION

We reverse Troyton Tardiff's convictions and remand for a new trial.

A majority of the panel has determined this opinion will not be printed in the

Washington Appellate Reports, but it will be filed for public record pursuant to RCW

2.06.040.

_____
Fearing, J.

WE CONCUR:

_____
Lawrence-Berrey, J.

_____
Staab, J.